**Griffin MACY, Appellant/Cross–Appellee,**

v.

**WASTE MANAGEMENT, INC., Appellee/Cross–Appellant.**

No. 01–07–00276–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 28, 2009.

Opinion Concurring with Denial of En Banc
Consideration Aug. 28, 2009.

Opinion Dissenting from Denial of En Banc
Consideration Aug. 28, 2009.

John Zavitsanos, K.A.D. Camara, Paul M. Botros, Ahmad, Zavitsanos & Anaipakos, P.C., Thomas C. Wright, Wright Brown & Close, LLP, Houston, TX, for Appellant.

Don Jackson, Melissa Michelle Davis, Timothy F. Lee, Ware, Jackson, Lee & Chambers, L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellant, Griffin Macy, has filed a motion for rehearing of our March 12, 2009 memorandum opinion and judgment. We deny that motion. We, however, withdraw our March 12, 2009 memorandum opinion and judgment and issue this memorandum and judgment in its stead to clarify the analysis of the legal authority cited by Macy in his first appellate issue. Macy appeals a final judgment ordering he take nothing from appellee, Waste Management, Inc. The judgment also orders Macy to pay $170,173.19 to Waste Management for repayment of attorney's fees and litigation expenses advanced to Macy. Macy's three issues contend the trial court erred by (1) determining as a matter of law that Waste Management complied with the terms of the employment Agreement it had with Macy; (2) finding the Board of Directors' determination of cause was timely under the Agreement; and (3) denying certain discovery to Macy. In two issues in a cross-appeal, Waste Management contends it was entitled to judgment for $357,843.41, the entire amount of the fees it advanced to Macy, because Macy was not the prevailing party under the terms of the Agreement and the Agreement does not provide for segregation of attorney's fees. We conclude the trial court properly determined Waste Management complied with the terms of the Agreement; that Waste Management was due the return of only those fees it ad-

vanced to Macy following the decision of the Board of Directors (the Board) that Macy was terminated for cause, excluding the amount pertaining to litigation over the amount of the fees; and that the trial court properly denied the requested discovery. We affirm.

## Background

Waste Management hired Macy in 2000 as the vice president of Enterprise Systems Development (ESD) in charge of software development. Macy had an employment Agreement with Waste Management, which provided that his employment "shall continue . . . unless terminated pursuant to the terms of Section 5 and 6 of this Agreement."

Section 5 of the Agreement, entitled "Termination of Employment," provided that employment "may be terminated under the following circumstances." Those circumstances included death; total disability; voluntary termination by the employee; termination by the company without cause; and termination by the company for cause. The Agreement listed the following three criteria applicable to the designation of termination for cause under section 5:

(c) **Termination by the Company for Cause.** The Company may terminate Employee's employment hereunder for "Cause" at any time after providing written notice to Employee.

(i) For purposes of this Agreement, the term "Cause" shall mean any of the following . . . (C) fraud or embezzlement determined in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances. . . .

(ii) An individual will be considered to have been terminated for Cause if the Company determines that the individual engaged in an act constituting Cause at any time prior to a payment date for any amounts due hereunder, regardless of whether the individual terminated employment voluntarily or is terminated involuntarily, and regardless of whether the individual's termination initially was considered to have been for Cause.

(iii) Any determination of Cause under this Agreement shall be made by resolution of the Company's Board of Directors adopted by affirmative vote of not less than a majority of the entire membership of the Board of Directors at a meeting called and held for that purpose and at which Employee is given an opportunity to be heard.

In the event of a dispute arising out of section 5(c)—the section describing termination for cause—section 10 of the Agreement provided for advance payment of the employee's attorney's fees for resolution of disputes between the employee and Waste Management.

Depending on the circumstances under which the employee stopped working for the company, section 6 of the Agreement provided for the structure of compensation following termination. Upon termination for cause or voluntary termination of employment, the employee received few benefits, such as payment of accrued wages. However, for termination without cause, the employee received more substantial benefits to be paid over a two-year period of time. The Agreement provided,

(e) **Termination by the Company Without Cause.** . . . [T]he company shall pay the following amounts to Employee:

. . . .

(iii) An amount equal to two times the sum of Employee's Base Salary plus his or her target annual bonus (as then in effect), of which one-half shall be paid in a lump sum within ten (10) days after

such termination and one-half shall be paid during the two (2) year period beginning the date of Employee's termination....

In early 2004, Lynn Caddell was hired by Waste Management as its Chief Information Officer. At a meeting between Caddell and Macy, Macy stated he was thinking about leaving the company. On April 5, 2004, Macy stopped working for Waste Management. Caddell indicated she was accepting Macy's resignation. Macy, however, believed he was terminated without cause and entitled to severance fees in accordance with the Agreement.

Waste Management's Forensic Audit Services (FAS) conducted a "Special Review" of ESD, issuing an audit report in June 2004. FAS typically investigated financial impropriety within the company. The report indicated 12 people were interviewed, including Warren Brauer, "Finance Manager, ESD (Contractor)"; Gary Rind, "Budget Coordinator, ESD (Contractor)"; and Christy Cooper, "IT Controller." Macy was not interviewed.

In August 2004, Macy sued Waste Management for breach of contract for failure to pay the severance fees required for termination without cause. Waste Management generally denied, later amending to include affirmative defenses that Macy resigned or could have been terminated for cause.

In August 2005, and while Macy's lawsuit was pending, Waste Management convened the Board to determine the classification of Macy's departure. The Board, in writing, told Macy he was "invited to be heard at a special meeting called to consider whether [Macy] engaged in an act constituting Cause." Macy and Waste Management were told they could each submit a 10–page position paper with no more than 10 pages of exhibits, submit a proposed Board resolution, and make an oral presentation to the Board. Although the Board originally limited the oral presentations to 15 minutes per side, Macy's counsel was allowed approximately 30 minutes to address the Board at the meeting, which lasted approximately two hours. In addition to considering the oral statements by the parties' respective attorneys, the Board considered Macy's employment Agreement; the executive summary of the forensic audit report; and written documents submitted by counsel for Macy and Waste Management. Determining Macy committed fraud, the Board issued a resolution by a unanimous vote that cause existed for Macy's April 2004 termination. The Board determined Macy committed fraud by understating his departmental "headcount" and accumulating accruals. According to the Chairman of the Board, John Pope, these two problems could result in lack of compliance with Securities and Exchange Commission regulations.

Waste Management filed a matter-of-law motion for final summary judgment asserting the Agreement allowed the determination of cause to be made at any time prior to the date of any payment due under the Agreement. Waste Management also argued that the Agreement's unambiguous provisions required the Board to be the sole and final authority for the determination of cause. Waste Management further sought repayment of the attorney's fees it advanced to Macy. Waste Management later filed a matter-of-law and no-evidence motion for final summary judgment that the decision by the Board was made in good faith, and alternatively, seeking summary judgment limiting the fact finder to a review of whether the Board acted in good faith when it found Macy committed fraud.

Macy filed responses to Waste Management's motion for final summary judgment and competing motions for summary judgment. Macy challenged the Board's deter-

mination of cause under the Agreement by asserting he did not clearly waive his right to sue; the Board's determination of cause was not timely made under the terms of the Agreement; the Board waived its right to determine cause due to the delay in finding cause; the Agreement did not preclude the jury from reviewing whether cause to terminate Macy existed; and alternatively, if the trial court determined the Board's finding could be reviewed only on the matter of whether the Board acted in good faith, there was evidence raising a question of fact on the Board's good faith.

The trial court rendered partial summary judgment in favor of Waste Management, stating, "Section 5(c)(ii) of the Agreement allows the Board ... to make a cause determination at any time prior to a payment date for any amount due under the Agreement." The trial court subsequently granted Waste Management's motion for final summary judgment.

Upon prevailing in the summary judgment motions that determined Waste Management did not breach the Agreement, Waste Management filed a summary judgment motion for repayment of all the attorney's fees and litigation expenses it had advanced to Macy under the terms of the Agreement. The trial court declined the full amount requested by Waste Management, granting the motion for an apportioned amount.

After the trial court granted summary judgment in favor of Waste Management, Macy filed a motion for reconsideration of the court's order granting final summary judgment. In addition to reurging arguments previously presented, Macy asserted new arguments and evidence. After Waste Management responded to the motion for reconsideration, the trial court denied the motion and rendered the final, appealable judgment.

During the course of the underlying litigation, Macy issued multiple requests for production and interrogatories, ultimately filing a motion to compel. Waste Management requested protection from the discovery, as it pertained to individuals other than Macy. The trial court denied Macy's motion to compel and granted Waste Management's motion for protection.

## Summary Judgment for Macy's Claims for Breach of Contract

Macy challenges the trial court's orders granting summary judgment in favor of Waste Management.

### A. Standard of Review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). To prevail on a summary judgment, the movant has the burden of proving that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *Cathey*, 900 S.W.2d at 341.

In our review, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Our task is to "consider whether reasonable

and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007) (citing *Wal–Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex.2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex.2005)). When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex.2004).

**B. Applicable Law Concerning Interpretation of Contract**

"Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996)). "When parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining and considering the entire writing in an effort to give effect to and harmonize all provisions so that none will be rendered meaningless." *Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P.*, 111 S.W.3d 187, 196 (Tex.App.-Texarkana 2003, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *First City Nat'l Bank of Midland v. Concord Oil Co.*, 808 S.W.2d 133, 137 (Tex.App.-El Paso 1991, no writ); *KMI Cont'l Offshore Prod. Co. v. ACF Petroleum Co.*, 746 S.W.2d 238, 241 (Tex. App.-Houston [1st Dist.] 1987, writ denied)). Terms in contracts are given their plain, ordinary, and generally accepted meaning. *Creel v. Houston Indus., Inc.*, 124 S.W.3d 742, 749 (Tex.App.-Houston [1st Dist.] 2003, no pet.). Our primary concern in interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006). The intent of the parties must be taken from the agreement itself, not from the parties' present interpretations, and the agreement must be enforced as it is written. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731–32 (Tex.1981).

The dispute between the parties is over which of the benefits under section 6 of the Agreement Macy is entitled to receive. The parties here agree that Macy was an at-will employee who could be terminated for no reason at all. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 609 (Tex.2002). Because Macy was an at-will employee, Waste Management was required to give Macy only those benefits specified in the Agreement. *See Matagorda County Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex.2006) (noting that to alter at-will relationship, employer must unequivocally indicate definite intent to be bound not to terminate employee except under clearly specified circumstances).

**C. Terms of Agreement for Board's Determination of Cause**

■ In his first issue, Macy contends he should be allowed to have a jury independently decide whether there is cause to terminate him. Macy contends that because the Agreement failed to say that the Board's decision is final and binding, the jury should independently decide whether there was cause to terminate him, without any deference to the Board's decision. Alternatively, Macy contends the jury should review the Board's decision for bad faith.

**1. Decision Is Final Despite Absence of Certain Words**

We must examine the Agreement to determine the intent of the parties. *See*

*Seagull Energy,* 207 S.W.3d at 345. Although the Agreement does not expressly state that the decision is final and binding, it plainly states that Waste Management is to make the determination of cause. An examination of the entire Agreement shows it does not provide Macy any right of appeal to another entity, nor does it refer to any other entity as having the authority to determine cause. We conclude the intent of the Agreement is that the determination of cause must be made by Waste Management alone. *See id.* Nothing in the Agreement supports Macy's position that a jury should independently decide whether there is cause to terminate Macy. *See id.*

Macy also contends on appeal, "The Board's decision cannot be afforded any finality because the contract does not include a clear waiver of the right to sue, therefore the Court erred in granting summary judgment to Waste Management." *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 132 (Tex.2004)˙ (orig. proceeding) (holding right to trial by jury in civil case may be waived "with sufficient awareness of the relevant circumstances and likely consequences"). However, the trial court did not hold that Macy had waived the right to a trial by jury. Rather, the trial court determined the merits of the lawsuit for breach of contract by finding that as a matter of law, Waste Management did not breach its Agreement with Macy. The summary judgment ruling, deciding the Agreement was not breached as a matter of law, obviated the need for a jury to resolve the lawsuit for breach of contract. Therefore, the lack of an express waiver of the right to sue is immaterial because the trial court did allow Macy to sue for breach of contract and the court did decide the merits of the claim, albeit by summary judgment.

### 2. No Evidence Raises Issue of Fact About Board's Determination

■ Also within his first issue, Macy asserts the trial court erred in granting summary judgment because Macy presented evidence raising issues of fact whether "Macy voluntarily resigned or whether he was terminated for Cause." Macy contends Waste Management failed to conclusively show there was no dispute about the credibility of the witnesses, the inferences to be drawn from the evidence, and the weight to give the evidence.

The evidence conclusively shows the Board followed the terms of the Agreement in determining Macy was terminated for Cause. Macy does not dispute that all of the procedural requirements in section 5(c)(iii) were met by Waste Management. More specifically, Macy does not dispute that the determination of cause under this Agreement was made by resolution of the Board adopted by affirmative vote of not less than a majority of the entire membership of the Board at a meeting called and held for that purpose and at which Macy was given an opportunity to be heard.

The dispute between the parties is whether the requirements in section 5(c)(i) were met by Waste Management. Section 5(c)(i)(C) provides that Waste Management "may terminate" Macy's employment for "Cause," which means "fraud determined in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances." Giving effect to the intent of the parties as it is expressed in the contract, the plain reading of the Agreement shows the only conditions for Waste Management's determination of cause under 5(c)(i)(C) are that the Board must (1) find fraud (2) as determined in accordance with the company's normal investigative procedures consistently applied in comparable circumstances. *See Seagull Energy,* 207

S.W.3d at 345. The record conclusively shows that the Board found Macy committed fraud in understating his departmental "headcount" and in accumulating accruals.

Macy suggests irregularity occurred in the investigation procedures. Examining the evidence before the trial court at the time it rendered the summary judgments, Macy's evidence does not raise a question of fact on the matter of whether the company's normal investigative procedures were applied to Macy in a manner consistent with comparable circumstances. Brian Thelen's testimony shows that FAS typically took the lead in conducting investigations for impropriety within the company. Thelen said he had been involved in approximately a dozen investigations initiated by a senior vice president such as Caddell, and that at least half a dozen of those investigations involved allegations of fraud and were conducted solely by FAS.

In contrast, Macy pointed to testimony by Karen Francis, one of the interviewers conducting the forensic audit, who said that she destroyed her notes after the interviews. Francis testified that after the interviews were conducted,

> one of us would write up the interview, based on our notes, send it to the other one, the other one would read it, compare it to their [sic] notes, make any appropriate edits deemed appropriate by both interviewers and have a final interview report that we agreed on as accurate. And then we shred our interview notes after it's recorded into the interview report. So we probably shredded those notes before the end of the ESD review.

Although Macy suggests there is a sinister motive behind the destruction of the notes, he fails to provide any evidence to refute Francis's testimony that all of the information in the notes was recorded into the interview report. More importantly, he fails to show that this was not the usual practice of the forensic auditor. The absence of the handwritten notes does not raise a factual issue on the matter of whether the company's normal investigative procedures were applied to Macy in a manner consistent with comparable circumstances.

Macy also suggests irregularity in the forensic audit by pointing out that the company never interviewed Macy or any executive to whom Macy reported. No evidence shows that the company's normal investigative procedures included interviewing all ESD employees or the subject of the investigation. The failure of the forensic auditor to question all employees in ESD also does not raise an issue of fact concerning the regularity of the investigation procedure.

Macy further contends that Waste Management applied a stricter standard to Macy than to others at Waste Management. Macy refers to testimony by the chairman, who said that anyone complicit in the headcount or accrual manipulation should be fired. Macy then argues that "various people in the ESD group knew of the supposed and alleged improprieties of Macy, not to mention Warren Brauer and Gary Rind's direct involvement, and still no person was disciplined or terminated for their [sic] complicity." The evidence fails to raise an issue of fact because the subordinates were not similarly situated to Macy, who was vice president of ESD. Moreover, the Agreement required the Board's fraud finding be "determined in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances." Under the plain language of the Agreement, the reference to consistency in application to comparable circumstances refers to the investigative procedures; the reference does not speak to whether there must be equali-

ty in the punishment for certain conduct by dissimilar employees.

Macy further asserts, "The most egregious aspect of the special review is that Waste Management did not have an official headcount policy and no one involved (both interviewer and interviewee) had seen a policy regarding accruals." The Agreement, however, requires the Board's fraud finding to be "determined in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances." Under the plain language of the Agreement, the reference to consistency in application to comparable circumstances refers to the investigative procedures. The absence of a written or verbal policy is not pertinent to the procedure employed to investigate Macy. Macy's complaint about the absence of a policy is a substantive complaint concerning the merits of the Board's finding and is not a challenge to the Agreement's requirement that a finding of fraud be "determined in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances."

We conclude Macy's evidence presented to the trial court when the trial court rendered summary judgment in favor of Waste Management fails to raise a factual issue. We hold the trial court properly rendered summary judgment because no evidence shows the Board failed to comply with the terms set forth in the Agreement.

### 3. No Evidence of Bad Faith

■ Because no evidence raises the issue, the trial court did not err by declining to allow the jury to decide if the Board acted in bad faith. Macy cites *Goudie v. HNG Oil Co.*, 711 S.W.2d 716, 718 (Tex. App.-El Paso 1986, writ ref'd n.r.e.), *Associated Milk Producers v. Nelson*, 624 S.W.2d 920, 926 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.), and *Texaco, Inc. v. Romine*, 536 S.W.2d 253, 255 (Tex.Civ.App.-El Paso 1976, writ ref'd n.r.e.). These decisions hold that in situations

> where there is an employer-funded plan which is made a part of the employment contract between the employer and the employee, and with provisions which make the employer's determination final, that if the employer determines that an employee is not entitled to benefits, *the only way that determination can be attacked is by showing that there was bad faith or fraud in the employer's actions.*

*Goudie*, 711 S.W.2d at 718. Although these decisions looked to the treatment of others who were similarly situated in deciding whether the company acted in bad faith, the terms of those agreements required that similarly situated employees be treated the same, which is not what the agreement here states. *See Goudie*, 711 S.W.2d at 718 (holding there was some evidence of bad faith, which was defined as including dishonesty and unfairness, with regard to company's determination that similarly situated employees were treated differently under company's Executive Incentive Compensation Plan); *Nelson*, 624 S.W.2d at 926 (holding some evidence showed retirement committee acted in bad faith based on jury instruction that defined bad faith as using standards more strict than those applied to others similarly situated, which was based on retirement provisions that stated, "The decision by the retirement committee in such cases shall not be made in such a manner so as to discriminate in favor of participants who are officers, shareholders, supervisors or highly compensated."). *Compare Romine*, 536 S.W.2d at 255 (holding no evidence showed Texaco acted in bad faith, as defined in jury charge as "dishonesty" or "unfairness," in discharging Texaco em-

ployee, Romine, denying Romine benefits under Permanent Total Disability Plan, which terms specifically state eligibility is to be determined solely by Texaco).

The record here fails to include any evidence that Waste Management did not fully comply with the terms set forth in the Agreement it had with Macy. The terms of this Agreement specifically limited the procedural guarantees given to Macy to a determination of Cause done "in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances." The evidence conclusively shows Waste Management acted with fairness and honesty because it acted "in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances." There was no question of fact as to bad faith for the jury to decide. The trial court, therefore, did not err by rendering summary judgment in favor of Waste Management and by refusing to allow a jury to determine whether Waste Management acted in bad faith.

We overrule Macy's first issue.

**D. Timeliness of Determination for Cause**

■ In his second issue, Macy challenges the trial court's finding that the Board's determination of cause was timely under the Agreement. Macy asserts the trial court erred in interpreting the Agreement to allow the Board to make a cause determination after the initial severance payment was due. Although the parties agree the language of section 5(c) is unambiguous, they disagree about its meaning. Macy interprets the section to mean that the Board's right to make a cause determination existed only from the time the causative act occurred until the next severance payment date, which here means within 10 days of the day when Macy stopped working for Waste Management. Macy further

argues that because the Board did not act more timely, it waived its right to determine the nature of Macy's termination. Waste Management responds that a determination of whether cause for the termination existed may be made prior to the date of any severance payment, not just the first, or next, severance payment due.

We agree with the trial court's interpretation of section 5(c)(ii). Giving effect to the intent of the parties as it is expressed in the contract, the plain reading of this section shows the Board is allowed to make a cause determination at any time prior to a payment date for any amounts due under the Agreement. *See Seagull Energy*, 207 S.W.3d at 345. The Agreement unambiguously states, "An individual will be considered to have been terminated for Cause if the Company determines that the individual engaged in an act constituting Cause *at any time prior to a payment date for any amounts due* hereunder...." (Emphasis added). Furthermore, the Agreement allows the determination of cause to be made at a later point, even when the employee initially departs for a different reason. The Agreement unambiguously provides that the determination of cause can be made "regardless of whether the individual terminated employment voluntarily or is terminated involuntarily, and regardless of whether the individual's termination initially was considered to have been for Cause." Under the specific terms of the section describing termination for cause, the timing of the Board's determination of cause was permitted under the Agreement.

An examination of the entire Agreement is further evidence that the parties did not intend to limit the determination of cause to the first severance payment, or 10 days. Looking at sections 5 and 6(e) together, Macy's interpretation would require Waste

Management to discover the basis of the cause, accumulate and investigate relevant facts, convene a special meeting of the Board, and determine cause within 10 days of Macy's termination. If this were not accomplished, under Macy's interpretation, Waste Management would waive its contractual right to determine cause and would be required to continue paying all severance benefits owed even if an investigation ultimately produced evidence of cause.

When we read section 5(c)(ii) in light of the definitions, procedures, and review required by sections 5(c)(i) and (iii), and in light of the severance provisions of section 6, we cannot interpret the phrase "prior to a payment date for any amounts due hereunder" as reflective of the parties' intent to undertake all of the requirements of section 5(c) prior to the first severance payment. Macy's interpretation would immediately cut off the determination rights afforded Waste Management in sections 5(c)(ii) and (iii), rendering those rights meaningless. *See Rolling Lands Invs.,* 111 S.W.3d at 196–97. Macy's interpretation is not supported by a reading of the entire Agreement. *See Dorsett,* 164 S.W.3d at 662. We conclude section 5(c)(ii) is more reasonably interpreted to intend such a time frame that the procedures of 5(c)(i) and (iii) could be conducted. We hold that the trial court properly granted summary judgment, finding as a matter of law that the Board's determination of cause was timely, and not waived, under the Agreement. *See Nixon,* 690 S.W.2d at 548.

■ Macy also contends Waste Management waived the right to claim termination for cause due to its 16–month delay in convening the Board to make that determination. The record reflects that Macy's successor suspected cause for Macy's termination shortly after Macy's departure, and that Waste Management filed an amended answer within months of Macy's petition suggesting termination may have been for cause, conducted internal investigations, convened its Board, and determined cause within 16 months of Macy's termination. Having held Waste Management timely determined cause, we do not infer Waste Management's conduct demonstrated an actual intent to relinquish its right to determine cause, and Waste Management did not waive its right to do so. *See Williams v. Moores,* 5 S.W.3d 334, 337 (Tex.App.-Texarkana 1999, pet. denied).

■ Macy further asserts, "Since Waste Management failed to make payments to Macy as they came due, the company had materially breached the Agreement and was therefore precluded from taking advantage of the termination for cause provisions at a later date." Macy is correct that under contract law a party who has broken a contract cannot thereafter enforce the remaining terms. *See Baker Marine Corp. v. Weatherby Eng'g Co.,* 710 S.W.2d 690, 696 (Tex.App.-Corpus Christi 1986, no writ) (noting breaching party "cannot take advantage of provisions favorable to it contained in the very contract which it was found to have breached"). However, as we have explained above, the record undisputedly shows that the Agreement allowed Waste Management to make its cause determination at any point before any of the severance payments were due and even after termination for reasons other than cause. We hold that Waste Management did not breach the Agreement by determining cause for termination after Macy separated from the company for a different reason.

We overrule Macy's second issue.

### Macy's Motion for Reconsideration of the Summary Judgment

■ In its appellee's brief, Waste Management contends we should disregard

most of the evidence Macy refers to in his appellant's brief because the evidence was not part of the evidence before the trial court when the trial court granted the summary judgments in favor of Waste Management. Although Macy filed a reply brief, he did not dispute that he could have presented the evidence in the motion for reconsideration when the trial court rendered the summary judgment order, nor does he explain why this evidence was not presented to the trial court prior to rendition of the summary judgment.

■■■■ "After a court grants a summary judgment motion, the court generally has no obligation to consider further motions on the issues adjudicated by the summary judgment." *Kelly v. Gaines,* 181 S.W.3d 394, 416 (Tex.App.-Waco 2005), *rev'd on other grounds,* 235 S.W.3d 179 (Tex.2007); *see Gorrell v. Tex. Utils. Elec. Co.,* 915 S.W.2d 55, 60 (Tex.App.-Fort Worth 1995), *writ denied,* 954 S.W.2d 767 (Tex.1997). The standard of review for a motion to reconsider a prior summary judgment is whether the trial court abused its discretion. *AIC Mgmt. v. Baker,* No. 01–02–01074–CV, 2003 WL 22724629, at *7 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (mem. op.). An abuse of discretion will not be found if the movant cites no additional evidence "beyond that available to him" when the first summary judgment was granted. *See Kelly,* 181 S.W.3d at 416.

After the trial court rendered the summary judgment order in favor of Waste Management, Macy filed a motion for reconsideration that included a large volume of evidence he had never before presented to the trial court. Macy presented new evidence to assert a question of fact by claiming that (1) "there was no defined methodology for conducting the investigation or special review, and the auditor tasked with performing the review, Karen Francis, was not familiar with the whistleblower process of Waste Management"; (2) portions of interviews that were conducted were omitted from the special review report; (3) some people who were interviewed were not afforded the opportunity to review their statements for inaccuracies and some felt intimidated; (4) "[w]itnesses were shocked to find material misstatements and mischaracterizations 'attributed' to them after finally getting the chance to review their witness statements" created by the audit team; and (5) some members of the Board reviewed the entire forensic audit report when Macy was allowed only 10 pages to present his case.

The motions for reconsideration are based on evidence and arguments available to Macy before the trial court rendered the summary judgment order. *See id.* We cannot conclude the trial court abused its discretion by refusing to reconsider its summary judgment. *See id.*

### Denial of Discovery

In his third issue, Macy challenges the trial court's order denying certain discovery to Macy.

■■■■ An appellate court reviews a trial court's ruling on a motion to compel discovery under an abuse-of-discretion standard. *See Johnson v. Davis,* 178 S.W.3d 230, 242 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) (citing *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004) (discussing discovery sanctions)). Trial courts have broad discretion in matters of discovery. *Johnson,* 178 S.W.3d at 242. An appellate court should reverse a trial court's ruling on a motion to compel only when the trial court acts in an arbitrary and unreasonable manner, without reference to any guiding principles. *See Barnett v. County of Dallas,* 175 S.W.3d 919, 924 (Tex.App.-Dallas 2005, no pet.).

■ Macy states that he "attempted to pursue discovery regarding Revenue Management System and the 'substantial impact' of a potential $60 Million write down on the company's books and records as compared to the accrual balance Macy was accused of accumulating." Macy contends, "The contract required that any gross negligence or gross misconduct attributed to Macy have a 'substantial effect on the company.'" This evidence is immaterial to whether Waste Management failed to comply with the terms of the contract that left it up to the Board to decide whether Macy committed fraud.

■ Macy next contends he wanted more discovery into other investigations conducted by Waste Management to determine whether this investigation was conducted "in accordance with the Company's normal, internal investigative procedures consistently applied in comparable circumstances." As shown by the exhibits attached to the motion for reconsideration of the summary judgment, Macy deposed the chairman, many of the employees assigned to ESD, and individuals conducting the forensic audit. Macy fails to show how the trial court abused its discretion by denying further discovery into other investigations conducted by the forensic auditors. We conclude the denial of the discovery was not so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 75 (Tex.App.-Houston [1st Dist.] 2008, pet. denied); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985); *see also Lovelace v. Sabine Consol., Inc.*, 733 S.W.2d 648, 652 (Tex.App.-Houston [14th Dist.] 1987, writ denied). We hold the trial court did not abuse its discretion by denying the requested discovery. *See Dillard Dep't*

*Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995).

We overrule Macy's third issue.

### Waste Management's Cross Appeal for Entire Amount of Attorney's Fees

■ In its two issues in the cross-appeal, Waste Management challenges the trial court's grant of summary judgment for a partial amount of the attorney's fees it requested from Macy.

As we explain above, we review a trial court's summary judgment de novo. *See Dorsett*, 164 S.W.3d at 661. The movant has the burden of proving that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548. We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661.

Shortly after the lawsuit was filed in 2004, the trial court granted Macy's motion to have Waste Management advance interim attorney's fees and costs pursuant to section 10 of the Agreement, which provides,

If at any time during the term of this Agreement or afterwards there should arise any dispute as to the validity, interpretation or application of any term or condition of this Agreement, the Company agrees ... to promptly provide sums sufficient to pay ... Employee's reasonable costs and reasonable attorney's fees ..., provided: (a) that Employee shall repay any such amounts paid or advanced if Employee is not the prevailing party with respect to any dispute or litigation arising under Sections 5(c) or 8 of this Agreement, or (b) ... [that] Employee did not initiate frivolously such litigation.

Section 8 is inapplicable because it pertains to restrictive covenants not to compete. Section 5(c) is the section describing termination for cause. Thus, the question is whether this entire dispute from the beginning arose under section 5(c), because if it did, then Waste Management is entitled to the entire amount, but if it did not, then Waste Management is entitled to only the amount from the point that the dispute began to arise under section 5(c).

Waste Management contends it should have received the full amount of the fees it advanced to Macy, which is $357,843.40, rather than the portion it received, which is $170,173.19. The court initially calculated reimbursement due to Waste Management in the amount of $187,932.74 by determining that was the amount Waste Management advanced to Macy from the point the Board determined Macy was terminated for cause on August 25, 2005 to the point the litigation culminated. The court then subtracted $17,759.55 from the $187,932.74 because $17,759.55 was the amount of fees spent in the parties' section 10 dispute over the repayment of costs and fees. Accordingly, the court ordered Macy to repay fees in the amount of $170,173.19.

Examining the plain terms of the Agreement, Macy, as the non-prevailing party, must repay the sums advanced "with respect to any dispute or litigation arising under Sections 5(c) ... of this Agreement." See Creel, 124 S.W.3d at 749 (requiring examination of plain terms). Section 5 of the Agreement included departures from Waste Management for reasons of voluntary termination by the employee, and termination by Waste Management without cause. Those departures would not invoke section 10 of the Agreement, which only referenced departure under section 5(c), the section describing termination for cause. Section 5(c) of the Agreement was not the subject of the dispute between Macy and Waste Management until the Board referred to section 5(c) in deciding to terminate Macy for cause on August 25, 2005. When the Board made its determination that Macy was terminated for cause, the dispute became about section 5(c) of the Agreement. Before then, the dispute pertained to section 5(e) for termination without cause and section 6(e) for the company's failure to pay severance due to Macy for terminating him without cause. Although section 5(c)(ii) permits the cause determination to apply retroactively to the date of Macy's departure, it does not serve to amend the nature of the claims Macy filed in his lawsuit. Having reviewed the language of section 10 and giving those terms their plain and ordinary meaning, the trial court properly determined that only those sums that accrued after the August 25, 2005 cause determination arose under section 5(c). See id. Similarly, the court properly determined that the sums advanced after August 25, 2005 to dispute the repayment of fees under section 10 of the Agreement did not arise from sections 5(c) or 8 of the Agreement. We therefore hold the trial court properly awarded Waste Management the amount of $170,173.19.

We overrule the two issues presented in Waste Management's cross-appeal.

## Conclusion

We affirm the judgment of the trial court.

ELSA ALCALA, Justice, concurring with the denial of en banc consideration.

By focusing solely on the absence of the three words "final and binding," Justice Jennings's dissent from the denial of en banc consideration ignores the contents of the hundreds of words that comprise the 13 page contract between Griffin Macy and

Waste Management, Inc. For this reason, as well as the fact that this case does not meet the criteria for en banc consideration, I concur in the denial of en banc consideration.

## The Totality of the Agreement

Only by ignoring the totality of the Agreement can Justice Jennings suggest that the absence of the three words "final and binding" is pertinent. An examination of the Agreement as a whole plainly provides that the Board is the entity that is to determine cause, as long as the Board follows certain procedures. Section 5(c) of the Agreement states,

- *"The Company* may terminate Employee's employment hereunder for 'Cause' at any time[.]"
- "An individual will be considered to have been terminated for Cause if *the Company* determines that the individual engaged in an act constituting cause[.]"
- "Any determination of Cause under this Agreement shall be made by resolution of the Company's Board of Directors adopted by the affirmative vote of not less than a majority of the entire membership of the Board of Directors at a meeting called and held for the purpose and at which Employee is given an opportunity to be heard."

(Emphasis added). As shown by the express words of the Agreement, "the Company determines that the individual engaged in an act constituting cause[.]"

Macy argues that unless the words "final and binding" had been added to the sentence that states, "An individual will be considered to have been terminated for Cause if *the Company* determines that the individual engaged in an act constituting cause[,]" then some other entity—without any deference to the Company's decision—could determine whether there was Cause to terminate Macy. The problem with Macy's interpretation is that it ignores the plain words used in the Agreement that give Waste Management the sole power to decide whether Cause existed, as long as Waste Management followed the procedural requirements described in the Agreement.

If Macy had evidence to raise an issue of fact, then he would have been entitled to have a jury determine whether

- Waste Management made the Cause finding by a resolution of the Company's Board of Directors, adopted by the affirmative vote of not less than a majority of the entire membership of the Board at a meeting called and held for that purpose at which Macy was given the opportunity to be heard;
- the Company determined that Macy engaged in fraud; and
- the Company found fraud by using procedures in accordance with the Company's normal, internal investigative procedures consistently applied in comparable circumstances.

If there had been any factual issue concerning whether these procedures had been followed, then the jury would have to decide whether Waste Management breached the Agreement that required Waste Management to follow these procedures. Because there was no factual issue whether Waste Management fully complied with the Agreement, the trial court properly resolved this case by summary judgment.

In the panel opinion, we explain that this Agreement is similar, but not identical, to those agreements where decisions are left to one party's sole discretion; in those cases, the jury reviews for bad faith only, without reviewing the employer's actual determination that the employee was not

entitled to benefits. In the panel opinion, we state,

> Because no evidence raises the issue, the trial court did not err by declining to allow the jury to decide if the Board acted in bad faith. Macy cites *Goudie v. HNG Oil Co.*, 711 S.W.2d 716, 718 (Tex. App.-El Paso 1986, writ ref'd n.r.e.), *Associated Milk Producers v. Nelson*, 624 S.W.2d 920, 926 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.), and *Texaco, Inc. v. Romine*, 536 S.W.2d 253, 255 (Tex.Civ.App.-El Paso 1976, writ ref'd n.r.e.). These decisions hold that in situations
>
>> where there is an employer-funded plan which is made a part of the employment contract between the employer and the employee, and with provisions which make the employer's determination final, that if the employer determines that an employee is not entitled to benefits, *the only way that determination can be attacked is by showing that there was bad faith or fraud in the employer's actions.*
>>
>> *Goudie,* 711 S.W.2d at 718.

*Macy v. Waste Management, Inc.*, 294 S.W.3d 638, 648 (Tex.App.-Houston [1st Dist.] 2009, no pet. h.) (mem. op.). *Goudie, Associated Milk Producers,* and *Romine* are similar to this case in that the employer, alone, is the entity given the decision making power to decide the matter of benefits due to an employee. *See Goudie,* 711 S.W.2d at 718; *Associated Milk Producers,* 624 S.W.2d at 926; *Romine,* 536 S.W.2d at 255. In these types of agreements where one entity is alone given the power to make the decision, a jury may decide whether the entity's decision was made in bad faith, but the jury may not review the correctness of the actual decision. *See Goudie,* 711 S.W.2d at 718; *Associated Milk Producers,* 624 S.W.2d at 926; *Romine,* 536 S.W.2d at 255.

Similarly to the decisions in these cases, the panel opinion determined that, here, the jury could not review the correctness of the actual decision, but the jury, if there was a question of fact, could review whether Waste Management complied with all the procedural requirements described in the Agreement.

Although the agreements in these decisions included the word "final," nothing in the decisions requires the inclusion of the word "final" for the decision to be left to the sole discretion of one party. *See Goudie,* 711 S.W.2d at 718; *Associated Milk Producers,* 624 S.W.2d at 926; *Romine,* 536 S.W.2d at 255. Furthermore, the agreements in these decisions refer to general employment contracts with an "employer-funded plan," which is different from the arms-length Agreement between these sophisticated parties that negotiated particular procedures to be followed when the Company made its decision. *See Goudie,* 711 S.W.2d at 718; *Associated Milk Producers,* 624 S.W.2d at 926; *Romine,* 536 S.W.2d at 255.

To support its accusation of "judicial fiat," the dissenting opinion fails to accurately apply the authority on which it relies. *See Fortis Benefits v. Cantu,* 234 S.W.3d 642, 649 n. 41 (Tex.2007). Excluding the legal citation, note 41 in its entirety states,

> As a rule, a court should not by judicial fiat insert non-existent language into statutes or into parties' agreed-to contracts, or delete existent language from them either. Our confined duty is to construe the contract as is, and holding that equitable considerations trump contrary contract terms would render contractual subrogation a nullity.

*Id.* The dissenting opinion violates *Fortis* by requiring the insertion of the magic words "final and binding"; by inserting non-existing language in the Agreement in

allowing another entity other than the Company to determine Cause; by deleting existing language from the Agreement that gives the Company, alone, the power to decide Cause; and by failing to construe the Agreement "as is." *See id.*

If there was any evidence that showed that Waste Management had failed to comply with the terms set forth in the Agreement, then Macy would be entitled to have a jury decide whether Waste Management breached the Agreement. Because no evidence shows that Waste Management failed to comply with each of the terms set forth in the Agreement, I concur in the en banc court's decision to deny en banc consideration of this case.

### Texas Rules of Appellate Procedure Disfavor En Banc Consideration

The Texas Rules of Appellate Procedure plainly state that en banc consideration is "disfavored" and "should not be ordered" unless one of two circumstances exist:

- En banc consideration is appropriate if it is "necessary to secure or maintain uniformity of the court's decisions."
- En banc consideration is appropriate if "extraordinary circumstances require en banc consideration."

*See* Tex.R.App. P. 41.2(c). Unless one of these two circumstances exists, the rules of appellate procedure require cases be decided in panels composed of three justices. *See id.* Justice Jennings was not assigned as a member of the three justice panel assigned to hear this case, nor did he participate in the panel conference, nor did he hear the oral argument heard by the panel.

In a footnote, Justice Jennings suggests that this case is worthy of en banc consideration because Macy claims that the panel's opinion "reads an arbitration provision into an agreement" and creates "a new standard pursuant to which parties must

expressly state that they are not forfeiting their right to sue." The panel opinion does not hold that this is an arbitration case; it is plainly evident that this is not an arbitration case as it was resolved based on the merits by summary judgment in the trial court. The panel opinion does not hold that Macy forfeited his right to sue; it is plainly evident this case does not concern the forfeiture of the right to sue, in that this case was resolved based on the merits by summary judgment in the trial court.

The panel opinion does not create a new standard, but instead applies well-established breach of contract law. The panel opinion states,

"Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 451 (Tex.2008) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996)).... Our primary concern in interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006). The intent of the parties must be taken from the agreement itself, not from the parties' present interpretations, and the agreement must be enforced as it is written. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981).

*Macy,* 294 S.W.3d at 645. This is a breach of contract dispute between sophisticated parties who entered into an arms-length contract with terms specific to their particular desires. Because the panel opinion applies well established law set by the Texas Supreme Court and our Court, nothing about this case lacks uniformity

with established precedent or is legally extraordinary. Justice Jennings, therefore, disregards the rules of appellate procedure criteria for en banc consideration.

### Designation of "Opinion" Inconsistent with Rules of Appellate Procedure

The panel that decided this case issued what was styled a "Memorandum Opinion" on March 12, 2009 and again on May 28, 2009, but the designation is now changed to "Opinion" due to Justice Jennings's vote that the case be designated an "Opinion." *See* TEX.R.APP. P. 47.4 ("An opinion may not be designated a memorandum opinion if the author of a concurrence or dissent opposes that designation."). I respectfully disagree with designating this case an "Opinion" because this case does not meet the criteria in the rules of appellate procedure for that designation.

According to Rule 47.2 of the Texas Rules of Appellate Procedure, "A majority of the justices who participate in considering the case must determine whether the opinion will be signed by a justice or will be per curiam and *whether it will be designated an opinion or memorandum opinion.*" TEX.R.APP. P. 47.2(a) (emphasis added). Here, the panel of justices who decided the case unanimously reached the decision to designate this case a "Memorandum Opinion" on March 12, 2009 and again on May 28, 2009.

The panel correctly designated this a "Memorandum Opinion." Rule 47.4 of the Texas Rules of Appellate Procedure states,

If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it. An opinion may not be designated a memorandum opinion if the author of a concurrence or dissent opposes that designation. An

opinion **must be designated a memorandum opinion** unless it does any of the following:

(a) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases;

(b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;

(c) criticizes existing law; or

(d) resolves an apparent conflict of authority.

*See* TEX.R.APP. P. 47.4 (emphasis added). None of these circumstances exist here. Because Justice Jennings disregards the rules of appellate procedure criteria for evaluating the case, we are compelled to designate the case as an "Opinion," even though the panel that decided the case unanimously voted to issue the decision as a "Memorandum Opinion" and none of the criteria in the rules of appellate procedure for designating the case as an "Opinion" apply in this case.

### Conclusion

I respectfully concur with the en banc decision to deny en banc consideration in this case because the panel opinion is legally correct and this case does not meet the criteria for en banc consideration. Furthermore, I oppose changing the designation of the case to "Opinion" because the case does not meet the criteria for that designation.

En banc consideration was requested. *See* TEX.R.APP. P. 41.2(c).

A majority of the Court voted to deny en banc consideration. *See* TEX.R.APP. P. 49.7.

Justice ALCALA, concurring to the denial of en banc consideration.

Justice JENNINGS, dissenting from the denial of en banc consideration, joined by Justice KEYES.

TERRY JENNINGS, Justice, dissenting from the denial of en banc consideration.

In its opinion, the panel erroneously concludes that the intent of appellant, Griffin Macy, and appellee, Waste Management, Inc., as expressed in their employment contract, was for Waste Management "alone" to have the power to make the legal determination as to whether Waste Management had terminated Macy's employment "with cause." However, as conceded by the panel, the contract "does not expressly state that the decision" of Waste Management's board of directors to terminate Macy's employment with cause has the legal effect of being "final and binding," precluding him from litigating the issue in a court of law. In effect, as argued by Macy in his Motion for En Banc Consideration of this case, the panel, "by judicial fiat," inserts this "non-existent language" into the employment contract in violation of well-established Texas law. *See Fortis Benefits v. Cantu,* 234 S.W.3d 642, 649 n. 41 (Tex.2007). Thus, the panel errs in affirming the judgment of the trial court. Accordingly, I respectfully dissent from the denial of en banc consideration of the case.[1] *See* Tex.R.App. P. 41.2(c).

Macy's employment contract provided that Waste Management could terminate his employment "with" or "without cause." If terminated without cause, Waste Management agreed to pay Macy two times the sum of his base salary "plus his target annual bonus (as then in effect), of which one-half shall be paid in a lump sum within ten (10) days after such termination and one-half shall be paid during the two (2) year period beginning the date of Employee's termination...." If terminated with cause, Waste Management agreed to pay Macy only accrued wages.

Section 5 of the employment contract expressly defined "cause" and outlined a specific procedure for Waste Management to follow in terminating Macy's employment for cause:

**(c) Termination by the Company for Cause.** The Company may terminate Employee's employment hereunder for "Cause" at any time *after providing written notice to Employee.*

(i) For purposes of this Agreement, the term "Cause" shall mean any of

1. In regard to the Concurring Opinion From the Denial of En Banc Consideration, it must first be noted that the Texas Supreme Court has made clear that "when a court of appeals votes against hearing a case en banc, any member of the court is entitled to file a dissent, regardless of whether the judge was on the original panel deciding the case." *O'Connor v. First Court of Appeals,* 837 S.W.2d 94, 97 (Tex.1992). Here, Macy, in his motion, asserts that the panel's opinion "reads an arbitration provision into the agreement," raising an issue of uniformity with another First Court of Appeals' opinion. *See Bates v. MTH Homes–Texas, L.P.,* 177 S.W.3d 419 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). Macy further argues that the "panel's opinion and judgment also create a new standard pursuant to which parties must ex-

pressly state that they are not forfeiting their right to sue when entering into a contract that delegates a particular decision to a particular person or entity," and that this newly-created standard is contrary to "well-established law." These arguments are objectively valid. This is not a situation in which there is a simple disagreement with the panel's opinion over an important issue. Rather, as pointed out by Macy, the panel's error is extraordinary, requiring en banc consideration. *See* Tex.R.App. P. 41.2(c). Accordingly, Macy's motion should be granted.

Second, the Texas Rules of Appellate Procedure expressly provide that "[a]n opinion may not be designated a memorandum opinion if the author of a concurrence or dissent opposes that designation." Tex. R.App. P. 47.4.

the following ... (C) fraud or embezzlement determined in accordance with the Company's normal investigative procedures consistently applied in comparable circumstances....

(ii) An individual will be considered to have been terminated for Cause if the Company determines that the individual engaged in an act constituting Cause *at any time prior to a payment date for* any amounts due hereunder, regardless of whether the individual terminated employment voluntarily or is terminated involuntarily, and regardless of whether the individual's termination initially was considered to have been for Cause.

(iii) Any determination of Cause under this Agreement shall be made by resolution of the Company's Board of Directors adopted by affirmative vote of not less than a majority of the entire membership of the Board of Directors at a meeting called and held for that purpose and at which *Employee is given an opportunity to be heard.*

(Emphasis added.)

Pursuant to the contract, Waste Management could only terminate Macy's employment for cause after providing him with written notice and an opportunity to be heard. Although Waste Management could, regardless of whether it had previously determined that the termination of Macy's employment was without cause, subsequently consider his employment terminated with cause, nothing in the contract evidences an intent of the parties that this determination would be considered "final and binding," precluding him from litigating the issue in a court of law.

Believing that his employment had been constructively terminated without cause, Macy stopped working for Waste Management on April 5, 2004. In August 2004, he sued Waste Management for breach of the employment contract. One year later, in August 2005, only after being sued for breach of contract, and while the lawsuit was pending, did Waste Management's board of directors meet to determine whether it had previously terminated Macy's employment "with" or "without cause." Thus, in August 2005, after being sued, the board determined that it had terminated Macy's employment "with cause" in April 2004.

After the board made its belated determination, Waste Management then filed its summary judgment motion, asserting that the board was the sole and final authority for making the legal determination as to whether Macy had been terminated for cause in April 2004. The trial court granted Waste Management summary judgment, and the panel affirms.

In its opinion, under the subheading **"Decision is Final Despite Absence of Certain Words,"** the panel reasons,

Although the Agreement *does not expressly state that the decision* [of the board] *is final and binding,* it plainly states that Waste Management is to make the determination of cause. An examination of the entire Agreement shows it does not provide Macy any right of appeal to another entity, nor does it refer to any other entity as having the authority to determine cause. We conclude the intent of the Agreement is that the determination of cause must be made by Waste Management alone. ... Nothing in the Agreement supports Macy's position that a jury should independently decide whether there is cause to terminate Macy.

(Emphasis added.)

There are at least three serious flaws in the panel's reasoning. First, the parties to a contract do not have to expressly state in

their contract that they have the right to enforce the contract in a court of law and have a jury determine fact issues. Rather, the opposite is true. Only if the parties intend that their contract may be enforced in a specific way or in a specific forum, must the contract expressly state how and where. Here, it is indeed the "absence of certain words" regarding dispute resolution that precludes the panel's conclusion to the contrary.

Second, the plain language of the contract does not evidence any intent of the parties to provide a mechanism for dispute resolution, especially one in which Waste Management's board of directors would be the final arbiter of any disputes between Waste Management and Macy. It is well-settled that Texas courts are to determine the intent of the parties to a contract by construing the plain language actually used in the contract and considering the contract as a whole. *Motiva Enterps., LLC v. McCrabb,* 248 S.W.3d 211, 215 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). Here, the panel inserts "non-existent language" into the employment contract in violation of this Court's precedent and well-established Texas law. *See id.; see also Fortis Benefits,* 234 S.W.3d at 649 n. 41. As argued by Macy,

> The panel's opinion and judgment, in effect, reads an arbitration provision into the Agreement, and makes the Board of Directors the arbiters. This is in conflict with a prior opinion of this Court, ... stating that "[t]his Court may not expand upon the terms of the contract or tolerate a liberal interpretation of it by reading into it a voluntary, consensual agreement to arbitrate when one otherwise does not exist." *Bates v. MTH Homes–Texas, L.P.,* 177 S.W.3d 419, 422 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding). This apparent

conflict raises an issue of uniformity that should be addressed by this Court en banc. TEX.R.APP. P. 49.7

Only by improperly inserting "certain words," which are absent, into the contract could the panel possibly come to the conclusion that the parties intended that Waste Management's board of directors would be the final arbiter of any disputes between Waste Management and Macy.

Third, the plain language of the contract evidences that the parties had the exact opposite intent. Under the panel's interpretation, Waste Management would obviously have the final and binding say as to whether Macy's employment was terminated with cause. This interpretation, of course, defeats the obvious intent of the parties to actually protect Macy from the arbitrary termination of his employment through the provision of additional benefits for termination of his employment without cause. Section 5(c) of the contract simply defines cause and provides the procedure for terminating Macy's employment with cause, giving him the right of prior written notice and an opportunity to be heard. It also provided Waste Management with the protection of reconsidering any termination status upon learning that Macy had defrauded the company or embezzled from the company "at any time prior to a payment date for any amounts due hereunder." However, nothing in the contract evidences an intent of the parties that such a determination would be considered final and binding, precluding enforcement of the contract in a court of law and resolution of fact issues by a jury.

In fact, section 10 of the employment contract, entitled "Disputes and Attorneys Fees," provides that "should any dispute arise as to the validity, interpretation or application of any term of condition" of the contract, Waste Management agrees, upon

a written demand, to provide Macy sums sufficient to pay his reasonable attorneys fees and costs incurred "in connection with any dispute or *any litigation.*" (Emphasis added). Section 10 further provides that Macy must repay any amounts furnished if he "is not the prevailing party with respect to any dispute or litigation arising under [s]ection[ ] 5(c)." Thus, section 10 expressly contemplates litigation with respect to Macy's termination for cause in accordance with section 5(c), and nothing in section 10 limits the scope of the litigation or otherwise suggests that Macy should be precluded from challenging the cause determination in a court of law. Certainly, if the parties had intended to include such significant limitations on Macy's rights in the event of his termination, the parties would have expressly included these limitations in the section of the contract addressing "disputes."

Accordingly, I would hold that the trial court erred in granting summary judgment in favor of Waste Management. The panel's insertion of non-existent language into the employment contract and conclusion that Macy and Waste Management intended that Waste Management "alone" would have the power to make a final and binding legal determination as to whether it had terminated Macy's employment with "cause" are in serious error. *See Fortis Benefits,* 234 S.W.3d at 649 n. 41. Thus, I would grant Macy's motion for en banc consideration of the case. Tex.R.App. P. 41.2. I would further sustain his first issue, reverse the judgment of the trial court, and remand the case for a trial on the merits.