

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00548-CV

**SAN ANTONIO FEDERAL CREDIT UNION**,
Appellant

v.

Mario R. **CANTU**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-21715
Honorable Cathleen M. Stryker, Judge Presiding

Opinion by:     Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Luz Elena D. Chapa, Justice
                 Beth Watkins, Justice

Delivered and Filed: May 26, 2021

AFFIRMED

Appellant San Antonio Federal Credit Union (SACU) appeals a final judgment rendered

after a partial summary judgment and jury verdict in favor of appellee Mario R. Cantu. We affirm

the trial court's judgment.

### BACKGROUND

In 2008, Cantu began providing janitorial services to SACU. At that time, Cantu's primary

contract with SACU was Mike Galland, an SACU employee who signed one of the early contracts

with Cantu on SACU's behalf. Galland also oversaw the performance of Cantu and other outside vendors.

In 2015, SACU reassigned Galland to a new position and began transitioning some, but not all, of his former duties to Allen VanDeventer. In July of 2015, Galland and VanDeventer met with SACU's vendors, including Cantu, to inform them VanDeventer would be their "new point of contact" and that he was "taking over the administration of the contracts from [Galland]." Neither Galland nor VanDeventer told the vendors in general or Cantu in particular that this transition meant Galland lacked authority to negotiate or execute contracts on SACU's behalf.

On November 4, 2015, Cantu and Galland executed a new general services agreement ("the November GSA") regarding Cantu's janitorial work for SACU. Most of the November GSA consisted of a preprinted form used by SACU. The preprinted provisions included a paragraph stating the contract "continues on a month-to-month basis" and allowing either party to terminate the agreement without cause upon thirty days' written notice ("Paragraph 2"). However, Cantu and Galland inserted an additional, typewritten addendum labeled "Upon Termination":

> This is a 2 Year Contract Between SACU (San Antonio Credit Union) and CCC (Casa Cantu Cleaning) if there is any Concerns or Complaints and if in Result of Termination a 30 Day Letter of Pre Pending Termination is requested to resolve any existing issues with the performance or CCC Staff after No result is reached then an additional 30 Day Notice of Termination for either parties will be Required before such event. Also, the Notice needs to be a Certified Letter with all Dates and Signatures of both parties if such event should occur. CCC (Casa Cantu Cleaning) and SACU (San Antonio Credit Union) are both under Agreements to these terms.

While Schedule A of the November GSA contained a handwritten statement that "Prices Vary as Services Needed," it also included several pages of detailed price lists for Cantu's services. Each pricing page carried typewritten notations stating, "Cancellation of the Contract Needs to be 60 Days in Advance" and "This is a 2 Year Contract from Date Signed." Both Cantu and Galland signed and dated the November GSA on the main signature page and on each page of Schedule A.

The main signature page had Galland's name preprinted in the "Attn:" line of SACU's signature block and identified him as "AVP, SACU Project, Property/Facilities Manager."[1]

In December of 2015, VanDeventer emailed Cantu to notify him that SACU was "updating our service agreements and certificates of insurance." He asked Cantu to send him "the completed, attached 'General Services Agreement'" along with cost schedules and a current certificate of insurance. The form attached to VanDeventer's email ("the December GSA") was largely identical to the preprinted portion of the November GSA, including Paragraph 2. As in the November GSA, SACU's signature block had Galland's name preprinted in the "Attn:" line and identified him as "AVP, SACU Project, Property/Facilities Manager." However, it did not include the "Upon Termination" addendum of the November GSA or the typewritten notations that appeared on the November GSA's Schedule A. VanDeventer described the December GSA as "the new GSA approved by [SACU's] senior management." As VanDeventer requested, Cantu returned the December GSA with a certificate of liability insurance. Cantu appears to have signed the December GSA, but SACU did not. The December GSA is not dated.

Although the November and December GSAs differed in certain respects, they both included the following provision:

> This Agreement supersedes all prior oral or written proposals, communications or other agreements related to the subject matter of this Agreement. This Agreement sets forth the entire agreement between the parties with regard to the subject matter of this Agreement and no amendment shall be binding upon the parties unless in writing and signed by both parties.

Additionally, both GSAs prohibited Cantu from subcontracting any part of the work without SACU's written consent.

---

[1] VanDeventer testified that "AVP" stands for assistant vice president. While SACU argued below that Galland never held the position of assistant vice president, it is undisputed that SACU approved the form identifying him as "AVP."

On October 26, 2016, SACU notified Cantu it was terminating his services. Cantu sued SACU for breach of contract, arguing the November GSA only permitted termination for cause, and only after Cantu had been given a thirty-day opportunity to cure and an additional thirty days if he did not cure. In response, SACU argued, inter alia: (1) Galland lacked authority to execute the November GSA; (2) the December GSA was the controlling contract; and (3) if the November GSA controlled, it did not provide that the contract could only be terminated for cause. Cantu replied that the December GSA lacked essential elements of a contract. SACU later amended its answer to include a counterclaim for declaratory judgment, asking the trial court to construe the GSAs and declare, inter alia, that: (1) neither of the GSAs "include a provision requiring that termination be for cause"; (2) "either party had the right to terminate the contract with or without cause on 30 days' notice"; and (3) the December GSA superseded the November GSA.

The parties filed competing motions for summary judgment on Galland's authority and on which GSA controlled. SACU's motion also asked the trial court to declare as a matter of law that neither GSA provided it could only be terminated for cause. The trial court granted Cantu's motion for summary judgment and denied SACU's. In its order, the trial court specified, inter alia: (1) the November GSA "is the only valid, binding, and enforceable contract between" the parties; (2) the "Upon Termination" addendum of the November GSA "contains the material and controlling terms with respect to termination" and "require[s] that [SACU] must provide [Cantu] 30 days' written notice of any alleged breach and, if the issues regarding the alleged breach are not resolved, either party may seek termination by providing an additional 30 days' written notice of intent to terminate"; and (3) the December GSA is not an enforceable contract.

The parties tried Cantu's breach of contract and other claims[2] to a Bexar County jury. During trial, SACU moved for reconsideration of the trial court's partial summary judgment and sought a directed verdict on those issues. It also requested a jury submission asking whether its breach of the November GSA, if any, was excused by Cantu's prior material breach of that agreement and instructing the jury that Cantu's use of subcontractors was a material breach. The trial court denied SACU's motions for reconsideration and directed verdict, and instructed the jury consistent with the partial summary judgment. It also refused to submit SACU's proposed question and instruction on prior material breach, but it submitted questions and instructions asking the jury to determine if SACU's breach, if any, was excused for other reasons.

The jury found that SACU breached the November GSA and that its failure to comply was not excused, and it awarded monetary damages and attorney's fees to Cantu. After denying SACU's motion for judgment notwithstanding the verdict, the trial court signed a final judgment consistent with the jury's verdict. SACU filed a motion for new trial or, in the alternative, for remittitur, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

***Limitation of Liability***

In its eighth issue, SACU argues the trial court erred by denying its motions for directed verdict and judgment notwithstanding the verdict based on a limitation of liability clause in the November GSA. Because this assertion would, if meritorious, require rendition of judgment in SACU's favor, we consider it first. *See Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201–02 (Tex. 2003); *Maynard v. Booth*, 421 S.W.3d 182, 183 (Tex. App.—San Antonio 2013, pet. denied).

---

[2] Cantu also asserted tortious interference claims that are not at issue in this appeal.

*Standard of Review and Applicable Law*

Generally, we review a trial court's denial of motions for directed verdict and for judgment notwithstanding the verdict under a legal sufficiency standard. *See Westport Oil & Gas Co., L.P. v. Mecom*, 514 S.W.3d 247, 255 (Tex. App.—San Antonio 2016, no pet.) (directed verdict); *Alamo Cmty. Coll. Dist. v. Browning Constr. Co.*, 131 S.W.3d 146, 166 (Tex. App.—San Antonio 2004, pet. denied) (judgment notwithstanding the verdict). However, the trial court's interpretation of an unambiguous contract is a legal question we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). We apply well-settled contract-construction principles to determine whether the trial court correctly determined SACU was not entitled to either a directed verdict or judgment notwithstanding the verdict. *See URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763–64 (Tex. 2018). Because limitation of liability is an affirmative defense on which SACU bore the burden of proof at trial, it must show the evidence establishes all vital facts in support of that defense as a matter of law. *See Maynard*, 421 S.W.3d at 183–84.

Our objective in construing an unambiguous contract is to effectuate the parties' intent as expressed by the words they used in the instrument. *See Tawes*, 340 S.W.3d at 425. We read the contract as a whole, giving effect to all its words and phrases and avoiding constructions that render any provision meaningless. *See id.* If possible and proper, we will avoid "'a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L&F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

*Application*

Although other portions of SACU's brief challenge the validity of the November GSA, it assumes that agreement controls for the purposes of this issue. The November GSA contains a clause labeled "Limitation on [SACU's] Liability" that provides:

> [SACU]'s maximum liability to [Cantu] under this Agreement is expressly limited to the Fee for Services amounts actually paid or payable by [SACU] under this Agreement. Unless provided otherwise, said sum is payable only after [Cantu] has performed all of [his] duties and obligations and has met all the conditions contained in this Agreement.

That contract defines "Services" as "the services described on Schedule A to be provided by [Cantu]" and "Fee for Services" as "the fee set forth on Schedule A to be charged by [Cantu] in exchange for the performance of the Services."

The trial court's judgment awards Cantu the "Fee for Services," minus expenses, for the eleven months that remained of the November GSA after SACU terminated it. SACU argues this judgment is not supported by legally sufficient evidence because the limitation of liability clause restricts Cantu's recovery to "the amount payable to Cantu for work actually performed and invoiced" and it is undisputed that SACU paid those amounts. Cantu responds that the limitation of liability clause does not bar him from recovering damages for SACU's breach. He argues that term provides only that the "Fee for Services" will neither exceed the amounts listed in Schedule A nor be paid in advance without a separate agreement between the parties.

We agree with Cantu. SACU's construction of the limitation of liability clause effectively renders meaningless two other terms of the November GSA: the two-year period of that agreement and the sixty-day notice required prior to termination for cause. *See Va. Power Energy Mktg., Inc. v. Apache Corp.*, 297 S.W.3d 397, 403–04 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Under SACU's interpretation, SACU could, wholly without consequence, supply the notice required to terminate the contract early, then bar Cantu from its properties during the pre-termination notice period and refuse to pay him on the basis that he performed no work during that time. Such a result would allow SACU to deny Cantu the benefit of the two-year term and notice provisions for which the parties bargained. We may not interpret a contract in a way that allows one party to unilaterally disregard provisions of the agreement, especially where, as here, such an

interpretation would be "unreasonable, inequitable, and oppressive." *See Frost Nat'l*, 165 S.W.3d at 313; *see also Tex. Workers' Comp. Ins. Facility v. State Bd. of Ins.*, 894 S.W.2d 49, 54 (Tex. App.—Austin 1995, no writ) (interpretation that would allow one party to unilaterally modify terms was "contrary to a basic tenet of contract law").[3]

SACU further argues "Cantu knew that SACU could increase, reduce, or cease demand for his cleaning services at any time" because Schedule A of the November GSA notes "Prices Vary as Services Needed." In construing this provision, we may consider the business activity sought to be served—here, regular janitorial service at more than a dozen SACU branches specifically listed in the contract. *See FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 63 (Tex. 2014). We see nothing in the November GSA's language showing the parties contemplated SACU might "at any time" unilaterally determine that *no* janitorial services were necessary at any of those branches. To the contrary, Paragraph 5(b) specifies that "[n]o modification of the scope of the Services shall be binding on [SACU] or [Cantu] unless approved in writing and signed by [SACU] and [Cantu]." Similarly, Paragraph 5(a) provides that if SACU wished to change the services, it was required to request those changes from Cantu, who was in turn required to acknowledge that request in writing with a "firm cost proposal" that SACU could then accept or reject.

In short, Cantu's construction of the limitation of liability clause gives effect to all the contract's terms, while SACU's gives effect to only one clause read in isolation. As a result, we cannot say the trial court erred by rejecting SACU's construction. *See Frost Nat'l*, 165 S.W.3d at 312. Because SACU therefore did not show it was entitled to judgment as a matter of law based on the limitation of liability clause, the trial court did not err by denying its motions for directed

---

[3] Because SACU's interpretation would also effectively negate the thirty-day pre-termination notice required by the December GSA, this analysis applies even if we agree with SACU on its remaining issues.

verdict and judgment notwithstanding the verdict on this issue. *See Maynard*, 421 S.W.3d at 183–84. We therefore overrule SACU's eighth issue.

### *Partial Summary Judgment*

In its first, second, and fourth issues, SACU argues the trial court erred by denying its motion for partial summary judgment and granting Cantu's competing motion on the enforceability of the November and December GSAs and Galland's authority to execute the November GSA. In its third issue, SACU argues the trial court's summary judgment order incorrectly construed the November GSA.

#### *Enforceability of November and December GSAs*

##### *Standard of Review*

The parties filed competing motions for summary judgment on the points raised in SACU's first, second, and fourth issues. We review an order granting summary judgment de novo. *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 293 (Tex. 2020). When both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020).

##### *November GSA*

SACU's argument about the validity of the November GSA revolves around whether Galland had apparent authority to execute that agreement on SACU's behalf. Apparent authority exists if: (1) the principal either knowingly permits an agent to hold himself out as having authority or, through its own lack of ordinary care, bestows an indication of such authority on the agent; and (2) the principal's conduct would lead a reasonably prudent person to assume the agent had authority. *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). In determining whether apparent

authority exists, we focus solely on the conduct of the principal, and we must consider whether the principal had knowledge of all material facts. *Id.*; *Strad Energy Servs. USA, Ltd. v. Bernal*, No. 04-16-00116-CV, 2016 WL 6242839, at *2 (Tex. App.—San Antonio Oct. 26, 2016, pet. denied) (mem. op.).

In support of his motion for summary judgment, Cantu presented evidence that he had historically negotiated and executed his SACU contracts with Galland, and that he and Galland signed the November GSA on November 4, 2015. *See Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 551 (Tex. App.—Houston [14th Dist.] 2003, no pet.). He also presented evidence that on November 5, 2015, Galland's and VanDeventer's then-supervisor, Francisco Manon, emailed a template GSA to SACU Property Manager Carmel Elizardo. Manon's email to Elizardo described that template, which included Galland's preprinted name in the "Attn:" line on SACU's signature block and identified Galland as "AVP, SACU Project, Property/Facilities Manager," as "an approved SACU service agreement for future use." Additionally, Cantu presented evidence that the December GSA—which VanDeventer described to Cantu as "our [SACU's] service agreement"—still bore Galland's preprinted name in the "Attn:" line on the document's signature block and still identified him as "AVP, SACU Project, Property/Facilities Manager."

This evidence shows that around the same time Galland and Cantu executed the November GSA, SACU approved and internally circulated a preprinted document that listed Galland's name on the signature page and specifically held him out as the SACU employee whose attention to the contract was necessary. This evidence also shows SACU continued to describe that preprinted document as "our service agreement" in its communications to Cantu after Cantu and Galland executed the November GSA. This evidence consists solely of the conduct of the putative principal, SACU. *Cf. Gaines*, 235 S.W.3d at 183–84 (rejecting a claim of apparent authority

because the conduct in question "consists almost entirely of acts or statements attributed to the alleged agent . . . rather than to the putative principal"). Although SACU argues it lacked knowledge of all material facts because it was not aware that Galland and Cantu executed the November GSA, it has not argued or presented any evidence that it was unaware of the form GSA bearing Galland's preprinted name on the signature page. *See id.* at 182. Nor has it disputed the evidence showing its senior management approved that form. This uncontroverted evidence conclusively shows that SACU either knowingly permitted Galland to hold himself out as having authority to execute a contract or, through its own lack of ordinary care, bestowed an indication of such authority on him. TEX. R. CIV. P. 166a(c). Moreover, this evidence conclusively shows that SACU's own actions would have led a reasonably prudent vendor to assume Galland had such authority. *Id.* This evidence shifted the burden to SACU to, at a minimum, present evidence creating a genuine issue of material fact on Galland's apparent authority. *Id.*; *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511–12 (Tex. 2014).

The evidence SACU presented in support of its own motion for summary judgment included VanDeventer's testimony describing the December GSA—which, again, included Galland's preprinted name in the signature block—as "the new GSA approved by our senior management." SACU's summary judgment evidence also included Galland's testimony that Manon told him to execute a two-year contract with Cantu. Additionally, the evidence SACU presented in support of its response to Cantu's motion for summary judgment included an "accountability map" that described Galland's newly assigned duties as "accompanied by the authority to negotiate and execute contracts with third-party vendors within the financial authority of the facility project manager."[4] Because this evidence tends to support a conclusion that SACU

---

[4] There is some summary judgment evidence showing that "the financial authority of the facility project manager" was limited to $20,000 per month and that Cantu's invoices exceeded $20,000 a month. However, there is no summary

knowingly permitted Galland to hold himself out as having authority to execute a contract, the trial court did not err by concluding SACU failed to satisfy its burden on its own affirmative motion for summary judgment on Galland's authority. TEX. R. CIV. P. 166a(c); *PHI Air Med., LLC*, 610 S.W.3d at 846 (when reviewing competing motions, we consider all summary judgment evidence).

Nevertheless, SACU contends it met its burden to defeat Cantu's competing motion because it presented evidence raising a fact question on the reasonableness of Cantu's assumptions about Galland's authority. *See Gaines*, 235 S.W.3d at 183. As support for this proposition, SACU relies solely on evidence of the July 2015 meeting between Galland, VanDeventer, Cantu, and other SACU vendors. At that meeting, Galland and VanDeventer told the vendors VanDeventer would be their "new point of contact" and was "taking over the administration of the contracts from [Galland]." However, VanDeventer testified he and Galland did not tell the vendors that he was taking over all of Galland's duties. Additionally, it is undisputed that neither Galland nor VanDeventer told the vendors that Galland no longer had authority to negotiate or execute contracts on SACU's behalf.

By arguing that the July 2015 meeting raised a fact issue on Galland's apparent authority, SACU asked the trial court to infer: (1) VanDeventer's "taking over the administration of the contracts from [Galland]" gave him the authority to execute vendor contracts that Galland had previously possessed; (2) Galland no longer had authority to execute vendor contracts on SACU's behalf after VanDeventer took over certain parts of his job; and (3) a vendor in Cantu's position would have understood both of those facts based on what he was told during the July 2015 meeting. "[A]n inference stacked only on other inferences is not legally sufficient evidence." *Marathon*

---

judgment evidence that anyone at SACU ever informed Cantu or any other vendor about the financial authority limits of its employees, and both Manon and VanDeventer testified Cantu was never told about those limits. The summary judgment evidence also shows SACU did not typically share that information with its vendors.

*Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003). Because SACU's argument required the trial court to stack multiple inferences, this evidence, even when considered in the light most favorable to SACU, does not raise a genuine issue of material fact to defeat Cantu's motion for summary judgment. *See id.*; TEX. R. CIV. P. 166a(c).

After reviewing all the summary judgment evidence, we hold the trial court did not err by concluding Galland had apparent authority to execute the November GSA as a matter of law. Because the evidence shows Galland had apparent authority to execute the November GSA, the trial court also did not err by concluding that agreement is a binding and enforceable contract. *See Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 606 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("An agent's actions within the scope of its apparent authority are binding on the principal."). We therefore overrule SACU's arguments to the contrary.

*December GSA*

SACU also argues that even if the November GSA was once an enforceable contract, the December GSA controls because it "supersedes all prior oral or written proposals, communications or other agreements related to the subject matter of this Agreement." SACU contends that because the December GSA allows termination without cause upon thirty days' notice, it was entitled to judgment as a matter of law on Cantu's breach of contract claim.

Because the trial court did not specify its reasons for granting Cantu's motion for summary judgment on the enforceability of the December GSA, we must affirm that judgment if any of Cantu's theories were meritorious. *See Loeffler v. Lytle Indep. Sch. Dist.*, 211 S.W.3d 331, 342 (Tex. App.—San Antonio 2006, pet. denied). "A valid, enforceable contract exists when the following elements are shown: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent

that it be mutual and binding." *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet.). Moreover, an enforceable contract "must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). "Whether a contract contains all of the essential terms for it to be enforceable is a question of law." *Bandera County v. Hollingsworth*, 419 S.W.3d 639, 645 (Tex. App.—San Antonio 2013, no pet.).

In his motion for summary judgment, Cantu argued the December GSA was not sufficiently definite to be enforceable because, inter alia, "[i]t does not even have a date." The December GSA defines its "Effective Date" as "the date set forth on the signature page of this Agreement" and states the agreement "is effective as of the Effective Date." Additionally, it defines the "Start Date" of the contract as "the date set forth on Schedule A on which [Cantu] will begin providing the Services to [SACU]." However, while the December GSA defines its "Effective Date" and "Start Date" by specific dates that are to be identified in the contract itself, there are no dates listed anywhere in the December GSA. We must therefore determine whether the trial court could have properly concluded that the date of the contract was a material and essential term that was left undefined. *See id.*

SACU argues the "Start Date" is not a material and essential term because "Cantu had already begun performing janitorial services for SACU; indeed, he had been doing so for years." However, the plain language of the December GSA indicates the parties did not intend for its terms to take effect, if at all, until the "Effective Date." Where, as here, those terms included the replacement of an existing, enforceable contract, we cannot say the trial court erred by concluding that the date those terms took effect was material and essential as a matter of law. *See Fischer*, 479 S.W.3d at 237 (term is material if the "parties would reasonably regard [it] as vitally important" to their bargain) (internal quotation marks omitted). Because the December GSA leaves its

"Effective Date" undefined, the trial court did not err by concluding that contract was too indefinite to be enforceable and therefore could not supersede the November GSA as a matter of law. *See Hollingsworth*, 419 S.W.3d at 645 ("Where an essential term is open for future negotiation, there is no binding contract.") (internal quotation marks omitted); *cf. Sydow v. Sydow*, No. 01-13-00511-CV, 2015 WL 1569950, at *4 (Tex. App.—Houston [1st Dist.] Apr. 7, 2015, no pet.) (mem. op.) (holding parties' use of the word "supersede" in their agreement showed they intended that agreement to replace their previous obligations).

Cantu's motion for summary judgment also argued the December GSA was not enforceable because SACU did not sign it. "[A] contract need not be signed to be 'executed' unless the parties explicitly require signatures as a condition of mutual assent." *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010). Here, both the November and December GSAs specify that "no amendment shall be binding upon the parties unless in writing *and signed by both parties*." (emphasis added). It is undisputed that SACU did not sign the December GSA. Because the December GSA was not signed by both parties, the trial court did not err by concluding as a matter of law that it did not amend any portion of the November GSA. *See Tawes*, 340 S.W.3d at 425.

SACU argues the date and signature deficiencies in the December GSA do not render it unenforceable because the parties' conduct shows they intended to be bound by it. However, a contract's material terms must be accepted in strict compliance with the offer. *BoRain Capital, LLC v. Hashmi*, 533 S.W.3d 32, 36 (Tex. App.—San Antonio 2017, pet. denied). As explained above, the summary judgment evidence does not conclusively establish strict compliance with the offer SACU extended in the December GSA. Tex. R. Civ. P. 166a(c). Moreover, as support for this proposition, SACU cites authority holding that *beginning* work under a contract may constitute acceptance of its terms. *See Mid-Continent Cas.*, 323 S.W.3d at 157. But as SACU itself notes,

Cantu first began providing janitorial services, and SACU began paying him for those services, long before the existence of the December GSA. SACU cites no authority holding that as a matter of law, a party's continuing work under an already existing contract for services will give effect to a new, superseding contract for services that is otherwise unenforceable. Because the November GSA remained in effect as a matter of law, the parties' conduct shows only that they continued to perform and accept benefits under that contract, not that they reached an enforceable agreement to amend or supersede it.

For these reasons, the trial court did not err by concluding the December GSA is not a valid, binding, or enforceable contract as a matter of law. We therefore overrule SACU's first, second, and fourth issues.

*Construction of November GSA*

*Standard of Review and Applicable Law*

SACU's third issue focuses on the proper construction of the November GSA. In its motion for summary judgment, it framed this issue as whether the GSA "include[d] a requirement that the contract may be terminated only for cause." Because only SACU sought summary judgment on this issue, we must determine whether it met its burden to show it was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Because this issue is rooted solely in the interpretation of an unambiguous contract, we review the contract's language de novo to determine whether the trial court correctly determined SACU was not entitled to summary judgment. *See id.*; *URI, Inc*, 543 S.W.3d at 764.

Again, in construing a contract, we discern the parties' intent by examining the words they used, giving effect to all the agreement's language and avoiding constructions that will render any provision meaningless. *See Tawes*, 340 S.W.3d at 425. However, in harmonizing provisions that appear to conflict, "[a]dditions of handwritten or typewritten words in, and deletions from, a

printed form show the parties' particular intention and control over pre-printed terms." *U.S. Fire Ins. Co. v. Lynd Co.*, 399 S.W.3d 206, 216 (Tex. App.—San Antonio 2012, pet. denied). "The rationale for [this] rule is that typewritten provisions are the immediate language and terms selected by the parties themselves as setting forth their intentions, whereas the printed form is intended for general use without reference to particular objects and aims." *McCreary v. Bay Area Bank & Tr.*, 68 S.W.3d 727, 732 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd).

*Application*

The November GSA included both Paragraph 2's provision that the contract was a "month-to-month" agreement that could be terminated upon thirty days' notice and the "Upon Termination" addendum that placed additional restrictions on the parties' ability to terminate the contract. It is undisputed that Paragraph 2 is part of SACU's preprinted form GSA. Because the "Upon Termination" addendum was additional typewritten language that the parties specifically inserted into the November GSA, it controls over any conflicting language in preprinted Paragraph 2. *See U.S. Fire Ins. Co.*, 399 S.W.3d at 216; *McCreary*, 68 S.W.3d at 732. The trial court therefore did not err by concluding that "[t]he attachment titled 'Upon Termination' contains the material and controlling terms with respect to termination."

SACU argues, however, that the trial court's summary judgment order improperly rewrote the "Upon Termination" addendum. The trial court construed that clause as follows:

> The terms with respect to termination require that [SACU] must provide [Cantu] 30 days' written notice of any alleged breach and, if the issues regarding the alleged breach are not resolved, either party may seek termination by providing an additional 30 days' written notice of intent to terminate[.]

We disagree with SACU's contention that this construction improperly rewrote the terms of the parties' agreement. While they are worded differently, both the "Upon Termination" addendum and the trial court's order explain that Cantu was entitled to thirty days' written notice of any

alleged breach and, if that breach was not cured, then either party could terminate the contract upon an additional thirty days' written notice. We see nothing in the trial court's construction that alters the plain language of the parties' agreement. *See URI, Inc.*, 543 S.W.3d at 763–64.

SACU argues the "Upon Termination" addendum does not prohibit SACU from terminating Cantu without cause, but instead "prescribes certain termination procedures" in the event of a breach by Cantu. Assuming, without deciding, that this interpretation properly construes the "Upon Termination" addendum in isolation, we disagree that the November GSA as a whole permitted termination without cause. Although the November GSA is a contract for services rather than an employment contract, we find the law governing employment contracts instructive here. Generally, an employment relationship is terminable by either party at any time, with or without cause, unless the parties expressly agree to the contrary. *Curtis v. Ziff Energy Grp., Ltd.*, 12 S.W.3d 114, 117 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "An employment contract establishes an at-will employment relationship when the term of service is left to the discretion of either party, or the term is left indefinite or determinable by either party." *Ireland v. Franklin*, 950 S.W.2d 155, 158 (Tex. App.—San Antonio 1997, no writ). In contrast, an employment contract for a specific term generally "can only be terminated upon a showing of good cause for the discharge." *Curtis*, 12 S.W.3d at 117. A contract that "attempts to alter the presumption [in favor of at-will employment] must, in a meaningful and special way, limit the employer's right to terminate the employment at will." *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 229 (Tex. App.—Texarkana 1998, no pet.) (internal quotation marks omitted).

Here, multiple provisions of the November GSA specified the parties agreed to a two-year term. Other provisions of the contract specified, "Cancellation of this Contract Needs to be 60 Days in Advance." And, as noted above, the "Upon Termination" addendum specified that Cantu was entitled to thirty days' written notice of any alleged breach and that either party could

terminate the contract after an additional thirty day's written notice if the alleged breach remined unresolved. Even if we accept SACU's contention that the "Upon Termination" addendum merely create procedures to be followed in the event of a breach, these provisions, when taken together, limit the parties' ability to terminate the contract at will. *See id.* Moreover, because all these provisions are typewritten additions to SACU's standard form, they control over Paragraph 2's preprinted "month-to-month" term. *See U.S. Fire Ins. Co.*, 399 S.W.3d at 216; *McCreary*, 68 S.W.3d at 732. Based on the contractual language the parties chose in the November GSA, the trial court did not err by concluding SACU was not entitled to judgment as a matter of law on its claim that the November GSA permitted termination without cause. *See URI, Inc.*, 543 S.W.3d at 763–64; *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) ("The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used.").

We therefore overrule SACU's third issue.

### *Reconsideration of Summary Judgment and Exclusion of Evidence Regarding Authority*

In its fifth and sixth issues, SACU contends the trial court erred by refusing to reconsider the partial summary judgment at trial, instructing the jury consistent with the partial summary judgment, and excluding evidence SACU contends is contrary to the partial summary judgment.

#### *Standard of Review and Applicable Law*

While we review a summary judgment de novo, we review a trial court's ruling on a motion to reconsider a summary judgment for abuse of discretion. *See PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 729–30 (Tex. App.—San Antonio 2014, pet. denied); *Bailey v. Walsh*, No. 04-03-00459-CV, 2003 WL 22898476, at *2 (Tex. App.—San Antonio Dec. 10, 2003, pet. denied) (mem. op.). We also review a trial court's rulings on whether to submit or refuse a particular jury instruction and whether to admit or exclude evidence for abuse of discretion. *Gunn v. McCoy*, 554 S.W.3d 645, 675 (Tex. 2018); *Dodeka, L.L.C. v. Campos*, 377 S.W.3d 726, 731 (Tex. App.—San

Antonio 2012, no pet.). A trial court does not abuse its discretion unless it acts without reference to guiding rules or principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999).

A trial court may reconsider issues previously adjudicated in a summary judgment until it loses plenary power over those issues. *Grace v. Zimmerman*, 853 S.W.2d 92, 98 (Tex. App.—Houston [14th Dist.] 1993, no writ). However, it generally has no obligation to do so. *See Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court does not abuse its discretion by refusing to reconsider a summary judgment where the party seeking reconsideration "repeated the same arguments he had made in his initial opposition to [the opposing party's] motion for partial summary judgment." *Brashear v. Dorai*, No. 14-19-00194-CV, 2020 WL 5792304, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 29, 2020, no pet.) (mem. op.). Additionally, even if the party seeking reconsideration relies on evidence it did not present in the summary judgment proceeding, "[a]n abuse of discretion will not be found if the movant cites no additional evidence beyond that available to him when the first summary judgment was granted." *Macy*, 294 S.W.3d at 651 (internal quotation marks omitted).

### *Application*

SACU primarily argues the trial court abused its discretion because its "prior order on summary judgment was error." While it is true a trial court has no discretion in determining what the law is or applying the law to the facts, *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), we have already held the trial court did not err by granting Cantu's partial motion for summary judgment and denying SACU's. We must therefore determine whether the court abused its discretion by refusing to reconsider that ruling during the trial.

In urging the trial court to reconsider the partial summary judgment, SACU did not present any new arguments; instead, it challenged the partial summary judgment for reasons it had previously raised in opposition to Cantu's motion. *See Bridgestone Lakes Cmty. Improvement*

*Ass'n, Inc. v. Bridgestone Lakes Dev. Co.*, 489 S.W.3d 118, 125 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Furthermore, while SACU's offer of proof contained evidence it did not present during the summary judgment proceeding, SACU did not claim that evidence was unavailable to it before the rendition of the partial summary judgment. *See id.*; *see also Macy*, 294 S.W.3d at 651. We therefore cannot say the trial court abused its discretion by refusing to reconsider the partial summary judgment. Furthermore, because multiple issues that were submitted to the jury were affected by the partial summary judgment, we also cannot say the trial court abused its discretion by instructing the jury consistent with that judgment. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009) ("An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence.").

SACU also argues the trial court erred by refusing to allow the jury to consider evidence on Galland's authority because Cantu purportedly "opened the door" to that issue during trial. This argument essentially asks us to hold that once Cantu opened the door to the issue of Galland's authority, the trial court was required to admit evidence on that issue. We reject that assertion. When a party moves for reconsideration after the rendition of summary judgment, the trial court has discretion to either consider the arguments and evidence offered in support of that request or "simply deny" the motion "without considering its substance." *Charbonnet v. Shami*, No. 04-12-00711-CV, 2013 WL 2645720, at *5 (Tex. App.—San Antonio June 12, 2013, pet. denied) (mem. op.) (internal quotation marks omitted); *see also Circle X Land & Cattle Co., Ltd. v. Mumford Indep. Sch. Dist.*, 325 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (on reconsideration after summary judgment, trial court has discretion to "consider only the record as it existed before hearing the motion the first time"). Here, the trial court declined SACU's invitation to reconsider the summary judgment on Galland's authority both before and after Cantu opened the door to that issue. This decision fell squarely within its discretion. *Charbonnet*, 2013

WL 2645720, at *5; *see also Macy*, 294 S.W.3d at 651. Because the trial court was not required to consider the substance of SACU's motion for reconsideration, we cannot say it abused its discretion by excluding evidence that might have supported that motion. *See Charbonnet*, 2013 WL 2645720, at *5; *see also PNP Petroleum*, 438 S.W.3d at 731 (trial court has discretion to refuse to consider new evidence attached to motion to reconsider summary judgment).

We therefore overrule SACU's fifth and sixth issues.

### *Prior Material Breach*

In its seventh issue, SACU argues the trial court erred by refusing to submit a jury question and instruction on Cantu's prior material breach. Cantu responds, inter alia, that the evidence did not support the submission of that issue.

#### *Standard of Review and Applicable Law*

As noted above, we review a trial court's ruling on a requested jury question and instruction for abuse of discretion. *Gunn*, 554 S.W.3d at 675. "The court shall submit the questions, instructions and definitions . . . which are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. A trial court does not abuse its discretion by refusing to submit an issue that is not supported by the evidence. *See In re Estate of Raynes*, No. 04-18-00402-CV, 2019 WL 2272898, at *6 (Tex. App.—San Antonio May 19, 2019, no pet.) (mem. op.).

#### *Application*

SACU's proposed question and instruction would have asked the jury to consider whether its failure to comply with the November GSA was excused because Cantu previously failed "to comply with a material obligation of" that agreement. It also would have identified the agreement's prohibition on the use of subcontractors without SACU's consent as "a material obligation." The trial court refused to submit this issue to the jury because it concluded SACU did not sufficiently plead prior material breach as a defense to Cantu's breach of contract claim.

We will assume, without deciding, that the trial court erred by concluding SACU's answer did not sufficiently plead this issue. However, to be entitled to the submission of this issue, SACU was also required to present evidence supporting it. TEX. R. CIV. P. 278; *Raynes*, 2019 WL 2272898, at *6. As SACU's proposed question and instruction implicitly recognize, only a *material* prior breach by one party to a contract will excuse the other party from future performance under that agreement. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017). Although SACU's brief identifies evidence showing Cantu's use of subcontractors breached the November GSA, it does not point to any evidence showing that breach was material. *See id.* (identifying factors in determining materiality of a breach); *see also Madhavan A. Pisharodi, M.D., P.A. v. United Biologics, L.L.C.*, No. 04-18-00324-CV, 2020 WL 1443561, at *5–6 (Tex. App.—San Antonio Mar. 25, 2020, pet. denied) (mem. op.) (evidence of technical breach is not necessarily evidence of material breach). Nor does it offer an analysis on the materiality of Cantu's breach. *See Petroleum Workers Union of the Republic of Mex. v. Gomez*, 503 S.W.3d 9, 38–39 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Moreover, no evidence in the record supports a conclusion that Cantu's use of subcontractors "deprived [SACU] of a benefit which it reasonably expected or otherwise constituted a material breach." *United Biologics*, 2020 WL 1443561, at *6.

As the appellant, SACU bears the burden to establish grounds for reversal. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 478 n.6 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Because SACU has not identified evidence showing Cantu's breach was material, it has not shown the trial court abused its discretion by refusing to submit the proposed question and instruction on prior material breach. TEX. R. CIV. P. 278; *Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820, 833 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

We therefore overrule SACU's seventh issue.

## CONCLUSION

Having overruled each of SACU's issues on appeal, we affirm the trial court's judgment.

Beth Watkins, Justice