**Opinion issued June 29, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00474-CV

————————————

**RSM PRODUCTION CORP. AND JACK GRYNBERG, Appellants**

**V.**

**GLOBAL PETROLEUM GROUP, LTD., Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-74337**

---

## MEMORANDUM OPINION

This is the second appeal filed by appellants, RSM Production Corp. and Jack Grynberg (collectively "RSM"), concerning personal jurisdiction over appellee, Global Petroleum Group, Ltd. ("Global"), a Grenadian company. In RSM's first

appeal, this Court affirmed the trial court's order granting the special appearance of Global, one of several defendants in the underlying litigation, and held that Texas courts lack personal jurisdiction over Global for RSM's claims of misappropriation of trade secrets. The Texas Supreme Court denied RSM's petition for review.

The case proceeded in the trial court against the remaining defendants. After further discovery, RSM filed a motion to reconsider the grant of Global's special appearance. The trial court denied the motion. In a single issue with two subparts, RSM argues that the law-of-the-case doctrine does not bar the trial court and this Court from reconsidering the jurisdictional issue because (1) RSM has new evidence undermining our prior opinion, and (2) our prior opinion improperly resolved an issue on the merits of RSM's misappropriation claims against Global. We affirm.

## Background

The background and procedure of this case leading up to the trial court's order sustaining Global's special appearance were set forth in our prior opinion. We discuss the facts from our prior opinion as they are relevant to our analysis of RSM's issues in this appeal. *See generally RSM Prod. Corp. v. Global Petroleum Grp., Ltd.*, 507 S.W.3d 383 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

This case arises from the alleged misappropriation of RSM's trade secrets by Global and other defendants who are not parties to this appeal. *Id.* at 387. Grynberg, a Colorado resident, spent twenty-five years and several million dollars exploring

2

for oil and gas reserves off the coast of Grenada and gathering 2D seismic data. *Id.* at 386–87. He used the data to create a report and formed RSM Production Corp., a corporation registered in Texas with its principal place of business in Colorado, to contract with the Grenadian government to further explore the area. *Id.*

## A.    Global's Special Appearance and This Court's Prior Opinion

RSM sued Global and others in the underlying lawsuit, alleging that Global misappropriated RSM's seismic data and used it to develop Grenadian offshore oil and gas reserves under a license from the Grenadian government. *Id.* RSM alleged that it had approached British Petroleum Exploration Co. ("BPX"), a British company, about collaborating in developing Grenada's offshore oil and gas reserves. According to RSM, BPX copied RSM's seismic data without Grynberg's knowledge or permission. *Id.* RSM further alleged that Global obtained RSM's seismic data from BPX or its affiliate without Grynberg's permission in 2008 and then used the data to explore and develop the Grenadian offshore oil and gas reserves in 2013. *Id.* RSM also alleged that Global disseminated RSM's data to other companies for the commercial purpose of exploring the reserves. *Id.*

Global filed a special appearance and a plea to the jurisdiction.[1] *Id.* It asserted with supporting declarations that it is not a Texas entity; that it had no offices,

---

[1]    All references to Global's special appearance are to its third amended special appearance, which was the pleading on file at the time of the trial court's ruling.

employees, assets, or registered agents in Texas; and that it did not conduct business or advertise in Texas. *Id.* at 387–88. It also asserted that RSM had not identified any contacts between Global and third-party companies that were adequately connected to RSM's claims of misappropriation against Global. *Id.* at 388. Rather, Global argued that it obtained an exploration license from the Grenadian government in Grenada in 2008 so it could explore offshore hydrocarbon potential. *Id.* Global conceded that it had received "certain vintage 2D seismic data," some of which included RSM's allegedly proprietary data, in Grenada from the Grenadian government with its exploration license. *Id.* Global's Grenada project was halted from 2008 to 2013 for political reasons. *Id.*

When the project was reinstated, Global contracted with Tricon Geophysics, Inc. ("Tricon"). Tricon is a Colorado company with its principal place of business in Colorado and with other offices in Grenada, Venezuela, and Houston, Texas. *Id.* at 387–88. Specifically, Global contracted with Tricon in Tricon's Venezuela office to process and interpret previously acquired vintage 2D seismic data. That data included government-provided data, part of which was RSM's data, as well as data that Global obtained from at least two other sources. *Id.* at 388, 394–95. As part of the contract, Global sent Tricon a digital copy of the data, including RSM's data, to Tricon's offices in Grenada and Venezuela. *Id.* at 388. Tricon subcontracted part of the interpretation of Global's data to a third party, Houston-based Interactive

4

Exploration Solutions, Inc. ("INEXS"). *Id.* Tricon sent INEXS some of the processed 2D data to INEXS in Houston. *Id.* Tricon then provided Global with a report generated from the 2D seismic data that included some limited use of the vintage 2D data obtained from the Grenadian government. *Id.* at 394–95.

Dan Ward, INEXS's vice president of operations, provided a declaration in September 2014 in support of Global's special appearance. *Id.* at 389. Ward averred that Tricon retained INEXS to interpret certain 2D seismic data processed by Tricon, but INEXS could not interpret portions of the digital data that Tricon sent to it. INEXS therefore requested access to the original paper data from Tricon. *Id.* Tricon sent some paper data to INEXS in Houston, and Ward recalled that one of the paper sections was marked "GRYNBERG-1." *Id.* Ward stated, however, that due to the age of the data and "navigational problems associated with the seismic lines," none of RSM's seismic data was usable: the data was "of no value to the interpretation and mapping work performed by INEXS." *Id.*

RSM responded to Global's special appearance, asserting that Global had extensive contacts in Texas. *Id.* RSM argued that Global sent seismic data to Tricon, which used the data and then passed it on to INEXS in Houston to interpret. *Id.* Additionally, it argued that Global contracted with other Texas companies to further explore in Grenada, including by collecting new 3D seismic data that was based on Tricon's and INEXS's processing and interpreting of Global's vintage 2D seismic

data, some of which included RSM's data. *Id.* RSM contended that Global had meetings with, made phone calls to, and sent emails to these companies in Texas. *Id.*

RSM's response attached a deposition of Marco Angeli, a consultant for Global who oversaw Global's Grenadian development project. *Id.* at 388, 389. Angeli testified that Global's work was mostly completed through contractors located in Venezuela, such as Tricon. *Id.* at 389–90. He said that Global obtained seismic data for its Grenadian project from many sources. *Id.* at 390. In addition to the data that Global received from the Grenadian government, some of which included RSM's data, Global obtained other 2D data from third parties under licensing agreements. *Id.*

Angeli testified that the government-provided vintage 2D data that included some of RSM's data was of "very limited" use and that Global had to obtain additional data from other entities. *Id.* RSM's counsel asked, "But they were useful?" Angeli responded, "In a way, yes, because it was integrated into the whole picture." *Id.* Angeli also testified that INEXS received some 2D seismic data in Houston from Tricon. Global's emails indicated that paper copies of a portion of RSM's seismic data were located in Houston for at least some period of time. *Id.* Angeli testified that, after RSM filed suit, he collected that data and returned it to Grenada in January 2014. *Id.*

Angeli further testified that he visited Houston four times in 2013 and 2014 for meetings in connection with the Grenada project. *Id.* During one meeting, he met INEXS's representatives, and Ward presented "preliminary" results based at least in part on processed 2D data that included Global's government-provided data and other data that Tricon had obtained. *Id.* During other meetings, Angeli met with third-party companies with which Global contracted to obtain new 3D seismic data. *Id.*

RSM's response also attached as evidence a July 2013 email from Ward ("Ward's July 2013 email") with an attached spreadsheet. The email stated that the spreadsheet showed "the usefulness or lack of usefulness of the newest 2D lines." The spreadsheet referenced several lines of vintage 2D seismic data, five lines of which were labeled "Grynberg 1" through "Grynberg 4" and "Grynberg 4SE."

The trial court sustained Global's special appearance and dismissed RSM's claims against Global for lack of personal jurisdiction, leaving three defendants remaining in the lawsuit. *Id.* at 391. RSM filed an interlocutory appeal, and this Court affirmed the trial court's order. *Id.* at 400. In a lengthy, published opinion, we held that the trial court lacked specific personal jurisdiction over Global.[2] *Id.*

---

[2]    RSM did not argue that Global was subject to general jurisdiction in Texas. *See RSM Prod. Corp. v. Global Petroleum Grp., Ltd.*, 507 S.W.3d 383, 392 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

To the extent RSM alleged that Global may have committed a tort in acquiring RSM's seismic data, this Court concluded that "no pleadings or evidence demonstrat[ed] that this act occurred, even in part, in Texas." *Id.* at 393–94 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660–61 (Tex. 2010), and *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)). Rather, "Global's unrebutted jurisdictional evidence established that Global obtained the 2D seismic data from the Grenadian government in Grenada." *Id.* at 394.

This Court also concluded that the jurisdictional evidence did not support RSM's allegations that (1) Global purposefully availed itself of the Texas forum in its dealings with Tricon and Houston-based INEXS, and (2) Global's contracts with other third-party entities, which used Tricon's report to obtain new 3D seismic data, were substantially connected to RSM's misappropriation claims against Global. *Id.* at 395–96. RSM filed a petition for review in the Texas Supreme Court, and the court denied RSM's petition.

**B.     RSM's Motion for Reconsideration Based on Alleged New Evidence**

Following our prior opinion, RSM pursued discovery on the merits of its claims against other entities, including deposing Ward. RSM then filed a motion to reconsider the trial court's grant of Global's special appearance, relying primarily on Ward's July 2013 email with the attached spreadsheet and his deposition testimony. RSM argued that Ward's July 2013 email, spreadsheet, and deposition

8

testimony contradicted his earlier declaration upon which Global's special appearance relied, stating that RSM's 2D seismic data was unusable.

According to RSM, Ward admitted that he had created his declaration in September 2014 exclusively for use in this litigation. RSM argued that a year before he created his declaration, he had reached the opposite opinion—as shown in his email and spreadsheet—that certain lines of RSM's data were "good" and "usable." Thus, in RSM's view, this Court's prior opinion affirming the trial court's grant of Global's special appearance "turn[ed] on whether [RSM's] 2D seismic data was usable, and whether it was actually used by INEXS and Tricon to create the report that served as the basis for the entire project." RSM further argued that our prior opinion "was based on a false assumption—one intentionally created by Global during this litigation."

Global filed a response to RSM's motion to reconsider. Global argued that RSM had attached Ward's July 2013 email and spreadsheet to its response to Global's special appearance, and thus the purportedly new evidence was not new or relevant to RSM's claims against Global. Global further argued that it did not control Ward, an employee of third-party INEXS, and that RSM did not attempt to depose Ward during jurisdictional discovery prior to the trial court's initial ruling on the special appearance. Finally, Global argued, although "the issue of usability was

9

discussed briefly by the Court of Appeals, that issue was in no way vital to the Court's opinion." The trial court denied RSM's motion for reconsideration.

RSM also filed a motion for new trial making many of the same arguments that it made in its motion for reconsideration. RSM argued that this Court had affirmed the trial court's grant of Global's special appearance "on a narrow basis" by "conclud[ing] that the special appearance was proper because there was evidence (via *affidavit* testimony from *one* witness) that the data was so old that it was 'unusable.'" Global filed a response, and the court denied RSM's motion for new trial. The court severed RSM's claims against a remaining defendant, rendering its denial of RSM's motion for reconsideration a final, appealable order. *See In re Henry*, 388 S.W.3d 719, 725 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (stating that trial court may sever a lawsuit, resulting in two or more independent suits, each of which leads to its own final appealable judgment). This appeal followed.[3]

### Law of the Case Doctrine

RSM contends that the law-of-the-case doctrine does not bar the trial court or this Court from reconsidering Global's special appearance. RSM primarily argues that new evidence—i.e., Ward's July 2013 email and spreadsheet showing he opined

---

[3] Global did not file a brief in this appeal, and its counsel filed a notice of nonrepresentation.

that RSM's data was usable—shows Ward misrepresented that RSM's data was unusable in his September 2014 declaration supporting Global's special appearance. RSM also argues that our prior opinion was improperly based on a resolution of merits-based fact issues.

## A.     Standard of Review

A trial court has wide discretion in granting or denying a motion for reconsideration. *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We therefore review a trial court's denial of a motion for reconsideration for abuse of discretion. *Id.* A court does not abuse its discretion if a movant cites no additional evidence "beyond that available to him" when the court granted the initial motion. *Id.*

## B.     Governing Law

Under the law-of-the-case doctrine, a decision rendered in a former appeal is generally binding in a later appeal of the same case. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012) (citing *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003)). The Texas Supreme Court has described the doctrine as follows:

> The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy

and efficiency. The doctrine is based on public policy and is aimed at putting an end to litigation.

*Briscoe*, 102 S.W.3d at 716 (quoting *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)); *see Paradigm Oil*, 372 S.W.3d at 182 (stating that decision by court of appeals becomes law of case in trial court and court of appeals).

The doctrine is not an absolute bar to reconsideration of the same issue in a second appeal. *Briscoe*, 102 S.W.3d at 716. Rather, the doctrine is flexible and provides courts of appeals with discretion to reconsider an issue depending on the particular circumstances surrounding the case. *Id.*; *Shiloh Treatment Ctr., Inc. v. Ward*, 608 S.W.3d 337, 341 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). One exception to the doctrine is where an appellate court's original decision is clearly erroneous, in which case the original decision is not binding in a subsequent appeal. *Briscoe*, 102 S.W.3d at 716; *Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 337 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). As the Texas Supreme Court has stated:

> It would be unthinkable for [the court], after having granted the writ [of error], reconsidered the case, and arrived at the conclusion that the opinion on the former appeal was clearly erroneous, to hold that it is bound by considerations of consistency to perpetuate that error. Our duty to administer justice under the law, as we conceive it, outweighs our duty to be consistent.

*Briscoe*, 102 S.W.3d at 716–17 (quoting *Conn. Gen. Life Ins. Co. v. Bryson*, 219 S.W.2d 799, 800 (Tex. 1949)). In addition, the doctrine does not necessarily apply

when either the issues or the facts presented in successive appeals are not substantially the same as those involved in the first appeal. *Jenkins*, 469 S.W.3d at 337; *see Hoagland v. Butcher*, 474 S.W.3d 802, 809–10 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[U]nless the facts have sufficiently changed, our holdings in the previous appeal regarding personal jurisdiction are the law of this case.") (citing *Hudson*, 711 S.W.2d at 630).

## C. Analysis

RSM argues that the law-of-the-case doctrine does not bar reconsideration of the personal jurisdiction issue because our prior opinion was based on a misrepresentation. This misrepresentation was allegedly revealed by "new evidence" that INEXS did in fact use RSM's seismic data in Tricon's report that "served as the basis for the entire [Grenada] project." RSM argues that Ward "still maintained that the [RSM data was] unusable" in his deposition, but he conceded that he had at some point in time believed the data was usable. He also conceded that he created his September 2014 declaration solely for use in this litigation.

RSM primarily relies on Ward's July 2013 email with the attached spreadsheet, as well as Ward's 2015 deposition testimony about the email and spreadsheet. In Ward's July 2013 email, he stated,

> Attached is a spreadsheet showing the usefulness or lack of usefulness of the newest 2D lines. The green lines are good and are being interpreted and mapped. The yellow lines are technically fine but are

13

only useable for mapping shallow reflectors. . . . The red lines have nav problems and are not useable at this time.

The attached spreadsheet is a black and white photocopy without any highlighting. The spreadsheet contains references to numerous lines of vintage 2D seismic data, five lines of which are labeled "Grynberg 1" through "Grynberg 4" and "Grynberg 4SE." Lines 4 and 4SE state, "Navigation issues, does not show up within project area." Lines 1–3 state, "Good line. Slight water bottom mis-tie. Mappable deeper data." Line 1 also states, "Good tie to existing pay (Dragon 1)." Line 2 contains the additional comment, "'Un-usable' line."

As an initial matter, Ward's July 2013 email and attached spreadsheet are not new evidence. RSM attached both documents to its response to Global's special appearance, which was on file when the trial court issued its special appearance ruling. Thus, this evidence was not "beyond that available to [RSM]" when the court initially granted Global's special appearance.[4] *See Macy*, 294 S.W.3d at 651.

We also disagree that this evidence—which was before the court at the time of the special appearance—reveals a misrepresentation about whether RSM's data was usable. At his deposition in 2015, Ward was presented with his July 2013 email and attached spreadsheet. He acknowledged that he created the spreadsheet prior to

---

[4] RSM also argues that it was prevented from deposing Ward in jurisdictional discovery. However, RSM does not cite the record on appeal to support its assertion. *See* TEX. R. APP. P. 38.1(g).

depositions in this case. He further acknowledged that he had characterized RSM's Lines 1–3 as "good lines" in his 2013 email, but he stated that that opinion was based on looking at a paper copy of the data and was not based on his interpretation of the data.

Ward's counsel then asked Ward why his September 2014 declaration stated that the data was unusable, but his July 2013 spreadsheet stated that some of RSM's data contained "Good line[s]." Ward explained that his interpretation of the data was an iterative process. Once he digitized the vintage 2D seismic data and compared it to navigational data, he determined that RSM's data was "in the wrong place" and did not match up with the navigational data. He also stated that "Dragon field" on Line 1 referred to a label that was on the paper copy of the seismic data when he received it, but he was aware of a Dragon field area that was not productive as of the time of his deposition. He testified that he did not rely on the spreadsheet when interpreting the 2D seismic data. Rather, he used it in his decision-making process as an "inventory." He also testified that RSM's data was not ultimately usable for his interpretive process.

Considering that more than a year passed between Ward's July 2013 email and his September 2014 declaration, we find that his statements are consistent. At best, Ward's July 2013 email and spreadsheet show that Ward initially believed in July 2013 that some of RSM's data was usable, but he apparently changed his

15

opinion prior to his September 2014 declaration. That is, although Ward may have believed in July 2013 that RSM's data was usable, he no longer believed this at the time of his September 2014 declaration or his deposition in 2015. In 2014 and 2015, Ward consistently maintained that RSM's data was not usable, was not interpreted by INEXS, and did not appear in Tricon's and INEXS's report.[5]

In short, while Ward's email, spreadsheet, and deposition testimony perhaps show that Ward initially believed RSM's data would be usable, RSM has not presented any evidence that Tricon's report used RSM's data. This evidence does not alter the conclusion in our prior opinion that Global's contractual dealings with the three third-party Texas entities to collect new 3D seismic data and develop and manage Global's Grenada project were not substantially connected to RSM's misappropriation claims against Global. *See RSM Prod.*, 507 S.W.3d at 395–400; *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007) (holding that substantial connection must exist between defendant's forum contacts and operative facts of litigation to support exercise of specific jurisdiction).

We also note that the spreadsheet attached to Ward's July 2013 email is internally inconsistent. While Lines 1–3 include a comment that they are "good

---

[5]     Ward also submitted a declaration in support of other defendants' summary judgment motions. That declaration was signed in May 2015 and also stated that RSM's data was not usable.

16

line[s]," "good" is not defined and its assistance in determining whether the data was "usable" is not facially apparent. Moreover, Line 2 states that it is both a "[g]ood line" and an "'[u]n-usable' line," indicating that data in the spreadsheet can be both good and unusable. Ward was not asked about this inconsistency in his deposition.

Finally, we disagree with RSM that the usability of its data was an issue on the merits of RSM's misappropriation claims against Global. As stated above, we previously held that the trial court lacked personal jurisdiction over Global. *RSM Prod.*, 507 S.W.3d at 400; *see* TEX. R. CIV. P. 120a(2) ("No determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof."). We did not decide whether RSM's allegations constituted a meritorious misappropriation claim. We stated the elements for a claim of trade secret misappropriation, but we did not rely on those elements in our jurisdictional analysis. *See RSM Prod.*, 507 S.W.3d at 392–400. Nor did we opine whether RSM could prevail on a misappropriation claim without evidence that Tricon and INEXS used RSM's data.

To the contrary, our discussion of whether RSM's data was usable was confined to our analysis of whether Global's contacts with three Texas entities, which collected new 3D data and developed and managed Global's Grenada project, were substantially related to RSM's claims of misappropriation. *See id.* at 395–96. RSM alleged that Global's Texas contacts consisted of meetings in Texas with these

17

entities and phone calls and emails Global made and sent to these entities in Texas concerning Global's Grenada exploration project. *Id.* at 394. Resolution of the jurisdictional inquiry required a discussion of whether these alleged contacts were substantially related to Global's misappropriation claims. *See Moki Mac*, 221 S.W.3d at 585.

Our prior opinion properly resolved the factual issue of whether Tricon and INEXS used RSM's data in compiling their report for Global. *See Coleman*, 83 S.W.3d at 806 (stating that, in resolving legal question whether trial court has personal jurisdiction over defendant, court must frequently resolve fact questions and appellate court may review resolution of factual dispute). We noted that "RSM's assertion that Global is subject to specific jurisdiction here in Texas is based on its assertion that Global disclosed and otherwise used the data in Houston." *RSM Prod.*, 507 S.W.3d at 396. Thus, Global's special appearance "place[d] the issues of where Global's use of the data occurred and how that alleged use related to Global's Texas contacts squarely before both the trial court and this Court." *Id.* (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). We also acknowledged that the parties presented the trial court with "often-times competing evidence from either side (and at other times, wholly uncontroverted evidence presented by [Global])." *Id.* at 393. Thus, the trial court was required to resolve some questions of fact before deciding the jurisdictional question. *See Coleman*, 83 S.W.3d at 806; *RSM Prod.*,

18

507 S.W.3d at 393 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)). We determined that RSM lacked jurisdictional evidence showing that Tricon and INEXS used RSM's allegedly proprietary data:

> The only jurisdictional evidence supporting RSM's allegation that Tricon's report was based on RSM's 2D seismic data is the evidence that some of RSM's data was included in the vintage 2D data obtained from the Grenadian government and that at least some of this data was examined by Tricon and INEXS.

*RSM Prod.*, 507 S.W.3d at 395.

Global, on the other hand, presented Ward's declaration showing that RSM's data was not usable. *See id.* Angeli's testimony supported Ward's declaration by stating that the vintage 2D data from the Grenadian government was of "very limited" use and was to some extent "integrated into the whole picture," but RSM's data was not used in Tricon's and INEXS's report. *See id.* at 390, 395–96. A trial court may resolve a special appearance based on declarations and deposition testimony. TEX. R. CIV. P. 120a(3); *see* TEX. CIV. PRAC. & REM. CODE § 132.001(a) (providing that unsworn declaration may be used in lieu of affidavit).

Ward's declaration and, to a lesser extent, Angeli's deposition testimony factually disproved RSM's allegation that Global, through its third-party contractors, used RSM's data in Texas. RSM did not produce evidence rebutting Global's evidence. *See Kelly*, 301 S.W.3d at 658–59 (stating that plaintiff and defendant bear shifting burdens of proof in special appearance and, if defendant meets burden to

19

negate all alleged bases of jurisdiction, plaintiff can respond with evidence affirming allegations or risk dismissal of suit). As before, RSM has failed to provide adequate evidence supporting its claim that Global's contracts with these entities were substantially related to RSM's claim against Global for misappropriation of its trade secrets. *See RSM Prod.*, 507 S.W.3d at 395–400; *see also Kelly*, 301 S.W.3d at 659 (stating that defendant may negate alleged bases of jurisdiction on legal or factual basis).

In sum, we conclude that the facts in this appeal, including RSM's purportedly new evidence, are substantially the same as the facts involved in RSM's first appeal. *See Jenkins*, 469 S.W.3d at 337; *Hoagland*, 474 S.W.3d at 809–10. Neither RSM's evidence nor its arguments on appeal show that our prior opinion was clearly erroneous or present circumstances justifying reconsideration of the personal jurisdiction issue. *See Briscoe*, 102 S.W.3d at 716; *Jenkins*, 469 S.W.3d at 337. We therefore hold that the law-of-the-case doctrine bars reconsideration of the issue of personal jurisdiction over Global for RSM's claims of misappropriation of trade secrets. *See Paradigm Oil*, 372 S.W.3d at 182. Accordingly, the trial court did not abuse its discretion in denying RSM's motion for reconsideration. *See Macy*, 294 S.W.3d at 651. This Court declines to exercise its discretion to reconsider RSM's jurisdictional issue. *See Briscoe*, 102 S.W.3d at 716; *Ward*, 608 S.W.3d at 341. We overrule RSM's sole issue.

## Conclusion

We affirm the trial court's order denying RSM's motion for reconsideration.

## PER CURIAM

Panel consists of Chief Justice Radack and Justices Goodman and Farris.